**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GORDON G. SAWYERS,

     Plaintiff - Appellee,

v.

BRIAN NORTON, in his individual &
official capacities; JONATHAN L. HART,
in his individual & official capacities; SGT.
GARY BRUDER, in his individual &
official capacities; JESSE HAND, in his
individual & official capacities; DOES 1-
10, in their individual & official capacities,

     Defendants - Appellants.

No. 19-1230

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-02935-RM-SKC)**

_____

Sean J. Lane (Alex M. Pass, with him on the briefs), The Lane Law Firm, P.C.,
Greenwood Village, Colorado, for Defendants - Appellants.

Maren Chaloupka, Chaloupka Holyoke Snyder Chaloupka & Longoria, P.C., L.L.O.,
Scottsbluff, Nebraska (Jeffrey R. Hill, Jeffrey R. Hill, P.C., Colorado Springs, Colorado,
with him on the brief), for Plaintiff - Appellee.

_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

This case arose from Gordon G. Sawyers's pretrial detention at the Rio Grande County Jail ("RGCJ"), where his delusional behavior deteriorated to the point that he removed his right eyeball from its socket. He sued the sheriff in his individual and official capacities under 42 U.S.C § 1983 for a deliberate indifference Fourteenth Amendment violation and under state law for negligence.[1] He also sued the three on-duty officers in their individual capacities under § 1983, and their individual and official capacities under state law for negligence. The district court granted in part and denied in part the Defendants' summary judgment motion. They appeal the rulings denying their motion. Exercising jurisdiction under 28 U.S.C. § 1291:

- We affirm the denial of the three officers' motion for summary judgment asserting qualified immunity to the § 1983 claim. First, we lack jurisdiction on interlocutory review to address their factual challenges to the district court's conclusion that a jury could find a constitutional violation. Second, due to inadequate briefing, they waived an argument about clearly established law.

- We affirm the denial of sovereign immunity to Rio Grande County on the state law negligence claim because the Colorado Governmental Immunity Act ("CGIA") waives immunity for injuries resulting from operation of a jail.

---

[1] The parties refer to the deliberate indifference claim as an Eighth Amendment violation, but "[t]he constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019).

# I.  BACKGROUND

## A. *Factual Background*

"[W]hen reviewing the denial of a summary judgment motion asserting qualified immunity, we lack jurisdiction to review the district court's conclusions as to what facts the plaintiffs may be able to prove at trial."  *Fancher v. Barrientos*, 723 F.3d 1191, 1194 (10th Cir. 2013).  We therefore quote the district court's account of the facts pertinent to the issues raised on appeal.  *See id.*

> On November 17, 2015, Sawyers was arrested for having set fire to an art gallery under the belief that God had told him to "cleanse the business of witches with fire."  He was charged with a felony and booked into the Mineral County Jail, where he was initially assessed "to see if he was an imminent danger to himself, including suicidal risk or self harm."  A counselor concluded:
>
> > It is difficult to evaluate Mr. Sawyers['s] mental status completely due to his grandiose and persecutory delusions and psychosis that interferes with his being able to exercise good judgment, understand reality as others do, and to behave appropriately. . . .
> >
> > [H]e did not display any aggressive behavior toward himself, me or others.  He states that he has never been suicidal, even when he was depressed. . . . Although he clearly has mental health issues that I strongly suggest be treated while he is in custody, he denies any thoughts of harm to himself or others.  Therefore referral for further evaluation would be questionable, as he does not appear to meet the criteria for commitment under Colorado law.  I recommend that he continue to be evaluated while he is in custody, as he reports that he is not currently

3

receiving treatment and it is likely that his delusions and behavior in reaction to his hallucinations may intensify.

Because Mineral County has few resources, Sawyers was transported to the Rio Grande County Jail (RGCJ) later that day to be held on his charges. Defendant Norton is the Rio Grande County Sheriff. Defendants Bruder, Hand, and Hart are law enforcement corrections officers at RGCJ.

When he got to RGCJ, Sawyers affirmed that he had never attempted suicide and did not have any suicidal thoughts, and he was assigned to general population housing. But Sawyers exhibited extreme behavior at RGCJ—including peeling back his toenails, causing other self-inflicted wounds, refusing meals, and refusing medication—and he was seen several times by mental health professionals during his stay.

On November 19, 2015, Sawyers was evaluated by a San Luis Valley Mental Health Group (SLVMH) clinician. Sawyers denied symptoms of depression or anxiety, but the assessor diagnosed schizophrenia and recommended a psychiatric assessment and medication management.

On November 21, jailers moved Sawyers to a lockdown cell for entering another inmate's cell and spitting because he believed God had told him to do so. He was moved back to general population, but on November 27 guards moved him to the booking/observation cell because he had been suffering from further delusions and [was] found naked in another's cell attempting to put his penis into his own rectum. As Hart put it, "we had no choice ultimately but to place him in the holding cell because of his behavior."

On November 27, 2015, at RGCJ's request, another SLVMH clinician returned to evaluate Sawyers, but Sawyers refused to talk. The report states, "ES kept client on suicide watch and advised the guards that if he has another psychotic episode to take client to the ER and call ES." Per Rio Grande Sheriff's Office policy, inmates who threaten to commit suicide will be placed in a holding cell and checked at least

4

every fifteen minutes until cleared. If SLVMH gives an order for an inmate's safety, including putting him on suicide watch as happened here, jailers cannot change or clear that order.

On November 28, SLVMH clinician Tammy Obie met with Sawyers, and her report recounts continued delusional behavior and notes that he had been belly cuffed by the jailers so that he would not harm himself but that he "adamantly denied [suicidal or homicidal ideations]." Obie's plan was that Sawyers would stay in the observation cell where he could be regularly monitored to ensure that he was not harming himself, but she concluded that he did not meet the criteria for invoking emergency procedures permitting the courts or mental health professionals to take action when a person appears to be at risk of harming themselves. Finally, Obie told the jailers that she would request a psychological evaluation for November 30.

On November 30, Sawyers was transported from RGCJ to SLVMH for another evaluation, but he again refused to cooperate with the psychiatric interview. The report from that day notes that Sawyers was not under a court order to obtain psychiatric treatment and could not be forced to sit for the interview or begin medications.

At some point on or before November 27, 2015, Sheriff Norton directed his deputies to document Sawyers's behavior in a log to assist SLVMH in assessing him. Thus, while officers at RGCJ use personal logs that detail events throughout their shifts—such as when inmates are out for showers or lunch is served—they kept a log specific to Sawyers entitled "Suicide Watch-15 Min." Officers filled this log out on the computer in the booking area next to the cell in which Sawyers was located. From 10:00 p.m. on November 27 through the end of November 30, this log details Sawyers's activity *ad nauseum*—whether his doings were mundane or noteworthy. December 1 is nearly empty, but the log continues with regular entries the morning of December 2.

5

On December 2, 2015, Defendants Hart, Hand, and Bruder were on duty at RGCJ during the evening shift. Hart and Hand were assigned to the booking desk area and were responsible for checking on Sawyers; Bruder was sitting in the sergeant's office around the corner and could see the booking area on a monitor. The parties have provided photos of the booking area in relation to the cell in which Sawyers was held. Seated at the booking desk, an officer would be able to view portions of the cell. Standing at the desk, nearly every corner of the cell is visible. The area also contains cabinets in which inmate medications are stored. Standing beside those cabinets, an officer can see the entire cell.

At some point during the evening shift, Hart stood at the medicine cabinets preparing medication to take to all of the inmates. Hart and Hand then left the area to distribute the same. Neither Hart nor Hand are sure exactly what time they left the booking area that night or how long they were away, but Hand testified that he usually performed this task at 9:00 p.m. and they were back within fifteen minutes. In fact, Defendants are adamant that Sawyers was observed at least every fifteen minutes that day. However, the "Suicide Watch" log has only ten entries from 2:15 p.m. to 9:45 p.m. and does not confirm any of Defendants' whereabouts or Sawyers's activity from 6:07 p.m. to 9:15 p.m.,[3] and there is no surviving surveillance video of the time in question.

When they returned, Hart went to the cabinet to return the medication cups, Hand sat down at the booking desk, and the two spoke for a few minutes. It is not clear who saw him first, but Hart or Hand noticed that Sawyers was turned away from them, had his hands on his face, and was bleeding. He claimed to have a bloody nose but refused to turn around. At around 9:15 p.m., the officers entered the cell and discovered that Sawyers had removed his right eye from its socket and was attempting to injure his left eye. They immediately restrained him to prevent further injury, and Bruder requested that dispatch page an ambulance. Sawyers vividly remembers removing his own eye to prevent it from being "harvested by the witches," but he doesn't recall anything else from earlier that day.

6

*Sawyers v. Norton*, No. 16-02935, 2019 WL 2327756, at *1-3 (D. Colo. May 31, 2019)

(citations and some footnotes omitted; paragraph breaks and spacing added).

## B. *Procedural History*

### 1. **The Complaint**

Mr. Sawyers's third amended complaint (the operative complaint here) alleged three causes of action.[2]

First, under 42 U.S.C. § 1983, Sheriff Norton, Deputy Hart, Sergeant Bruder, and Deputy Hand were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment.  Mr. Sawyers brought this claim against Defendants in their individual capacities.[3]

---

[2] The complaint included references to due process, equal protection, and bodily injury.  *See, e.g.*, App. at 25.  Those issues were not presented on summary judgment or on appeal.

[3] "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability."  *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).  Because Sheriff Norton was not personally involved in the events that occurred, and because Mr. Sawyers does not assert supervisory liability in the complaint, the nature of the individual capacity suit against him under § 1983 is unclear.  This does not matter here because the district court granted summary judgment to the sheriff on the individual capacity claim alleged against him under § 1983.  *Sawyers*, 2019 WL 2327756, at *5. Mr. Sawyers did not appeal this grant.

Second, under § 1983, Sheriff Norton was deliberately indifferent for (1) maintaining a policy or custom of deficient mental health care, (2) failing to train his officers to address mental health care issues, and (3) ratifying his officers' indifference to Mr. Sawyers's condition. Mr. Sawyers brought this claim against Sheriff Norton in his official capacity.

Third, under Colorado law, the defendants negligently caused his injuries. Mr. Sawyers brought this claim against Defendants in their individual and official capacities. But, as the district court pointed out, *see Sawyers*, 2019 WL 2327756, at *7, the official capacity claims amount to claims against Rio Grande County.[4]

## 2. Summary Judgment

Defendants moved for summary judgment. App. at 81. They argued that

(1) Mr. Sawyers could not show a constitutional violation of deliberate indifference;

(2) they were entitled to qualified immunity for the § 1983 claim and statutory immunity under the CGIA for the state law claim;

---

[4] Official capacity suits "impose[] liability on the entity that [the sued public servant] represents." *Couser v. Gay*, --- F.3d ---, 2020 WL 2603214, at *2 (10th Cir. 2020) (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). The official capacity claims against Sheriff Norton (under § 1983 and state law) and the three officers (under state law) thus appear to be claims against Rio Grande County, and like the district court, we will treat them as claims against the county. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Burke*, 935 F.3d at 1001. As Appellants point out, "the only proper official capacity claim . . . is against Sheriff Norton in his official capacity." Aplt. Reply Br. at 27.

8

(3) Sheriff Norton was not liable for a failure to train or supervise his deputies because there was no underlying constitutional violation; and

(4) Mr. Sawyers could not show any of the Defendants individually violated his constitutional rights.[5]

*See id.* at 81-93. The district court granted the motion in part and denied it in part.

*Sawyers,* 2019 WL 2327756, at *1.[6] It determined

(1) Sheriff Norton was entitled to summary judgment on the deliberate indifference claim "[t]o the extent deliberate indifference claims [were] raised against [him] in his individual capacity." *Id.* at *5. But the court denied summary judgment on this claim as to the three officers. *Id.* It noted "[t]here [was] too much factual deviance for [it] to be comfortable entering judgment in [their] favor at this juncture." *Id.*

(2) The three officers were not entitled to summary judgment on qualified immunity grounds because "it is . . . clearly established by Tenth Circuit precedent that [Mr.] Sawyers is entitled to protection against deliberate indifference." *Id.* at *6 (citing *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985) and *Martin v. Bd. of Cty. Comm'rs*, 909 F.2d 402 (10th Cir. 1990)).

(3) Mr. "Sawyers's state law negligence claims—to the extent that they [were] brought against Defendants in their individual capacities—are not cognizable, and judgment in favor of Defendants on them is appropriate" based on Colo. Rev. Stat. Ann. § 24-10-105(1). *Id.* The court noted "Defendants were clearly acting within the scope of their

---

[5] It is unclear how this argument differed from the first argument.

[6] The district court exercised supplemental jurisdiction over Mr. Sawyers's state law claims under 28 U.S.C. § 1367.

9

employment at all relevant times," so they cannot be liable based on the Colorado statute. *Id.*[7]

(4) Mr. Sawyers had not demonstrated "municipal liability." *Id.* at *6-7. The court noted Mr. "Sawyers ha[d] also sued Defendants in their official capacities, which amount[ed] to a claim against Rio Grande County itself." *Id.* *6. It found "no evidence of any informal or formal policy of denying healthcare." *Id.* *7. "Quite to the contrary, [Sheriff] Norton had an established policy and practice of using mental health professionals to evaluate inmates like [Mr.] Sawyers—and the record reflects that he was indeed evaluated several times and put under a close watch." *Id.* It also found "no evidence of shortcomings in the officers' training or any inappropriate ratification of their conduct." *Id.* It granted summary judgment "on all official capacity claims" under § 1983. *Id.*

(5) Summary judgment was denied on the state law "negligence claim against the county" because "sovereign immunity is waived by a public entity in an action for injuries resulting from the operation of a correctional facility." *Id.* (citing Colo. Rev. Stat. Ann. § 24-10-106(1)(b)).

The following chart summarizes the defendants, the claims alleged against them, and the district court's summary judgment rulings.

---

[7] Under Colo. Rev. Stat. Ann. § 24-10-105(1), "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton."

| DEFENDANTS | CLAIMS FOR RELIEF | DISTRICT COURT'S RULINGS ON SUMMARY JUDGMENT |
|---|---|---|
| **Sheriff Brian Norton**, sued in his individual and official capacities | 1. 42 U.S.C. § 1983 deliberate indifference under Fourteenth Amendment (individual capacity)<br><br>2. 42 U.S.C. § 1983 (official capacity)<br>  a. Maintaining a widespread policy or custom of failing to provide medical care for mentally ill detainees<br>  b. Failing to train his employees to recognize mental illness and self-harm<br>  c. Ratifying his officers' indifference to Mr. Sawyers<br><br>3. Negligence (individual and official capacities) | 1. Granted "[t]o the extent deliberate indifference claims are raised against Norton in his individual capacity"<br><br>2. Granted "on all official capacity claims" under § 1983<br><br>3. Granted "to the extent [the state law negligence claim was] brought . . . [against the sheriff in his individual capacity]," but **denied sovereign immunity for the "negligence claim against the county"** |
| **Deputy Jonathan L. Hart**, **Sergeant Gary Bruder**, and **Deputy Jesse Hand**, each sued in his individual and official capacities | 1. 42 U.S.C. § 1983 deliberate indifference under Fourteenth Amendment (individual capacities)[8]<br><br>2. Negligence (individual and official capacities) | 1. **Denied qualified immunity to all three officers**<br><br>2. Granted "to the extent [the state law negligence claims were] brought . . . in their individual capacities," but **denied sovereign immunity for the "negligence claim against the county"** |

[8] Although the complaint broadly stated that "[a]ll Defendants [were] liable for their actions in their individual and official capacities," App. at 19, the official capacity claim in the second cause of action of the operative complaint contains only allegations against Sheriff Norton, *see id.* at 27-31, indicating that only Sheriff Norton was sued in

Defendants timely appealed the bolded denials of summary judgment depicted above.  App. at 79.

## II.  DISCUSSION

On appeal, Appellants challenge only the district court's (A) denial of qualified immunity to the three officers on the individual capacity § 1983 deliberate indifference claim, and (B) denial of sovereign immunity to Rio Grande County on the official capacity state law negligence claim.  We affirm.

### A.  *Denial of Qualified Immunity under § 1983*

Deputy Hart, Sergeant Bruder, and Deputy Hand ("the officers") contend they are entitled to qualified immunity because Mr. Sawyers failed to show how they were deliberately indifferent to his serious medical needs under the Fourteenth Amendment.

### 1.  Legal Background

a.  *Qualified immunity*

i.  Appellate jurisdiction

This court has appellate jurisdiction to review "all final decisions of the district courts of the United States."  28 U.S.C. § 1291.  "Orders denying summary judgment are ordinarily not appealable final [decisions] for purposes of . . . § 1291."

---

his official capacity under § 1983.  To the extent any question remains, it does not affect the outcome of this appeal.

*Roosevelt-Hennix v. Pickett*, 717 F.3d 751, 753 (10th Cir. 2013). "The denial of

qualified immunity to a public official, however, is immediately appealable under the

collateral order doctrine to the extent it involves abstract issues of law." *Fancher*,

723 F.3d at 1198; *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Estate of

Ceballos v. Husk*, 919 F.3d 1204, 1213 (10th Cir. 2019).[9]

A circuit court "lacks jurisdiction at this stage to review a district court's

factual conclusions, such as the existence of a genuine issue of material fact for a

jury to decide, or that a plaintiff's evidence is sufficient to support a particular

factual inference." *Fancher*, 723 F.3d at 1199 (quotations omitted); *see Johnson v.

Jones*, 515 U.S. 304, 307, 313 (1995). "[I]f a district court concludes that a

reasonable jury could find certain specified facts in favor of the plaintiff, the

Supreme Court has indicated we usually must take them as true—and do so even if

our own *de novo* review of the record might suggest otherwise as a matter of law."

*Estate of Booker v. Gomez*, 745 F.3d 405, 409-10 (10th Cir. 2014) (quotations

omitted).[10]

---

[9] "[T]he collateral[ ]order doctrine expands the category of final (and therefore appealable) decisions to include decisions that are conclusive on the question decided, resolve important questions separate from the merits, and are effectively unreviewable if not addressed through an interlocutory appeal." *Rieck v. Jensen*, 651 F.3d 1188, 1190 (10th Cir. 2011) (quotations, ellipses, and brackets omitted).

[10] We have jurisdiction to review the factual record de novo when (1) "the district court at summary judgment fails to identify the particular charged conduct that it deemed adequately supported by the record," *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010); (2) "the version of events the district court holds a reasonable jury could credit is

Thus, "we must scrupulously avoid second-guessing the district court's determinations regarding whether [the appellee] has presented *evidence* sufficient to survive summary judgment." *Fancher*, 723 F.3d at 1199 (quotations omitted). "The district court's factual findings and reasonable assumptions comprise the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Cox v. Glanz*, 800 F.3d 1231, 1242 (10th Cir. 2015) (quotations omitted).

### ii. Qualified immunity standard

Section 1983 of Title 42 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "The statute is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (quotations omitted); *see Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (explaining "[t]here can be no 'violation' of § 1983" because the statute "is a remedial vehicle").

---

blatantly contradicted by the record," *id.* at 1225-26 (quotations omitted); or (3) "the district court commits *legal* error en route to a *factual* determination," *Pahls v. Thomas*, 718 F.3d 1210, 1232 (10th Cir. 2013). None of these circumstances pertain here.

When a § 1983 defendant raises the qualified immunity defense, the burden shifts to the plaintiff. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). To overcome qualified immunity, a plaintiff must show (1) facts that demonstrate the officials violated a federal constitutional or statutory right, which (2) was clearly established at the time of the defendant's conduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Estate of Booker*, 745 F.3d at 411.

### iii. Summary judgment and standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016) (quotations omitted). We apply "the same legal standard as the district court." *Id.*

"Within this court's limited jurisdiction, we review the district court's denial of a summary judgment motion asserting qualified immunity de novo." *Fancher*, 723 F.3d at 1199. "[W]e thus consider de novo the purely legal questions of [(1)] whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation and [(2)] whether that law was clearly established at the time of the alleged violation." *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quotations omitted).

15

b. *Deliberate indifference*

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *see Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."); *Barrie v. Grand Cty.*, 119 F.3d 862, 866 (10th Cir. 1997) (Claims based on an inmate's self-inflicted harm "are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody.").

"The constitutional protection against deliberate indifference to a pretrial detainee's serious medical condition springs from the Fourteenth Amendment's Due Process Clause." *Burke v. Regalado*, 935 F.3d 960, 991 (10th Cir. 2019). "In evaluating such Fourteenth Amendment claims, we apply an analysis identical to that applied in Eighth Amendment cases." *Id.* (quotations omitted).[11]

---

[11] As recognized in *Burke*, "the Supreme Court said the Eighth Amendment standard for excessive force claims brought by prisoners, which requires that defendants act 'maliciously and sadistically to cause harm,' does not apply to Fourteenth Amendment excessive force claims brought by pretrial detainees, which require showing only that the defendants' use of force was 'objectively unreasonable.'" 935 F.3d at 991 n.9 (quoting *Kingsley v. Hendrickson*, --- U.S. ---, 135 S. Ct. 2466, 2473 (2015)). We noted "the circuits are split on whether *Kingsley* alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees." *Id.* (brackets and quotations omitted).

Neither party here argues that *Kingsley* alters the deliberate indifference standard for pretrial detainees. As in *Burke*, we need not resolve this question for our circuit because we can affirm under the Eighth Amendment deliberate indifference standard, which is more favorable to the three officers. *See id.* (declining to address whether *Kingsley* altered the deliberate indifference standard for pretrial detainees

16

"The deliberate indifference standard has objective and subjective components." *Id.* at 992 (brackets and quotations omitted). Both must be satisfied. *See id*.

i. Objective component

"The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Id.* (quotations omitted). "A medical need is considered sufficiently serious to satisfy the objective prong if the condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki*, 762 F.3d at 1192-93 (quotations omitted).

ii. Subjective component

"To satisfy the subjective component, the plaintiff must show the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Burke*, 935 F.3d at 992 (quoting *Farmer*, 511 U.S. at 837). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotations omitted). "Whether a

where Eighth Amendment standard was "more favorable to the Sheriffs"); *Perry v. Durborow*, 892 F.3d 1116, 1122 n.1 (10th Cir. 2018) ("We haven't yet addressed *Kingsley*'s impact on Fourteenth Amendment claims like this one. And in the absence of briefing from either party, we decline to do so here, where resolution of the issue would have no impact on the result of this appeal.").

17

prison official had the requisite knowledge of a substantial risk is a question of fact." *Id.* (quotations omitted). "We have found deliberate indifference when jail officials confronted with serious symptoms took no action to treat them." *Id.* at 993.

2. **Analysis**

The district court denied qualified immunity to the officers because issues of fact precluded summary judgment. On appeal, they challenge the court's factual determinations. We lack jurisdiction to review these arguments. *See Fancher*, 723 F.3d at 1199-1200. The court also held the officers violated clearly established law. Due to inadequate briefing, the officers have waived a challenge to this determination. We therefore affirm the district court's denial of summary judgment on the § 1983 claim.

    a. *Constitutional violation*

The officers argue they were not deliberately indifferent to Mr. Sawyers's serious medical needs. *See* Aplt. Br. at 28-43. "Ultimately, however, [their] argument depends upon a challenge to the facts the district court concluded a reasonable jury could infer based upon the evidence in the summary judgment record." *Fancher,* 723 F.3d at 1199. We therefore lack jurisdiction to review their arguments regarding both the objective and subjective components of deliberate indifference.

i. Objective component

The officers contend that Mr. Sawyers failed to meet the objective component because his medical needs "did not appear to be 'sufficiently serious.'" Aplt. Br. at 31.

Although the officers attempt to frame this argument as a legal issue, they challenge the district court's factual determination of what a reasonable jury could infer. For example, they assert Mr. Sawyers's "medical need had not been diagnosed by a physician or a mental health professional as requiring treatment." *Id.* at 30. And they contend "mental health professionals had actually determined that [Mr. Sawyers] was not a danger to himself." *Id.*

But the district court "concluded the evidence was sufficient for a reasonable jury to draw a contrary inference." *Fancher*, 723 F.3d at 1200. The court noted "Mr. Sawyers was diagnosed with schizophrenia by two separate clinicians at SLVMH during his stay at RGCJ." *Sawyers,* 2019 WL 2327756, at *4. It added that, "after bearing witness to [Mr.] Sawyers's repeated, strange, and self-harmful acts over the days leading up to the eye incident, [the officers] did recognize the need for medical attention, enlisted SLVMH for further evaluation of [Mr.] Sawyers, and were beseeched by those same professionals to monitor him closely." *Id.*

The district court refused "to hypothesize as to whether a lay person would easily recognize the necessity for a doctor's attention because [the officers]—themselves not medical professionals—recognized it." *Id.* Because the officers

19

dispute the court's factual conclusions, we lack jurisdiction to consider this argument.[12]

### ii. Subjective component

The officers contend Mr. Sawyers failed to meet the subjective component. Because their arguments "cannot reasonably be understood as anything other than an attack on the[] [factual] conclusions of the district court, this court lacks jurisdiction to consider [them]." *Fancher*, 723 F.3d at 1200.

#### 1) Knowledge of an excessive risk to inmate health

The officers claim they did not act with the "sufficiently culpable state of mind required to establish . . . deliberate indifference to [Mr. Sawyers's] medical needs."

---

[12] Even if we accept that the officers challenge a purely legal determination, Mr. Sawyers met the objective component of deliberate indifference. *See Al-Turki*, 762 F.3d at 1192 ("A medical need is considered sufficiently serious . . . . if the condition has been diagnosed by a physician as mandating treatment . . . . " (quotations omitted)). He "was diagnosed with schizophrenia by two separate clinicians at SLVMH during his stay at RGCJ." *Sawyers,* 2019 WL 2327756, at *4. He also exhibited a series of strange and self-harming acts—such as peeling back his toenails, attempting to put his penis into his own rectum, and claiming God was speaking to him, *id.* at *2—that were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Al-Turki*, 762 F.3d at 1193 (quotations omitted). As the district court noted, SLVMH clinicians repeatedly assessed Mr. Sawyers because officials at RGCJ were concerned about his statements and activities at the jail. *Sawyers,* 2019 WL 2327756, at *4. RGCJ officers placed Mr. Sawyers in belly cuffs to prevent self-harm at SLVMH, and they moved him to the booking/observation cell for monitoring. *Id.* at *2; *see id.* at *4 ("[T]he Court does not have to hypothesize as to whether a lay person would easily recognize the necessity for a doctor's attention because Defendants—themselves not medical professionals—recognized it.").

20

Aplt. Br. at 31-32 (quotations omitted); *see id.* at 36-38, 42-43. They note "[t]he uncontested evidence is that [they] were not subjectively aware that [Mr. Sawyers] was a danger to himself or others." *Id.* at 36.

But the district court found that the officers "did recognize the need for medical attention, enlisted SLVMH for further evaluation of [Mr.] Sawyers, and were beseeched by those same professionals to monitor him closely." *Sawyers,* 2019 WL 23327756, at *4. For example, Deputy Hart said, "[W]e had no choice ultimately but to place him in the holding cell because of his behavior." *Id.* at *2 (quotations omitted).

The court noted Sheriff Norton "instructed his subordinates to keep regular watch over [Mr. Sawyers] in accordance with the suicide policy." *Id.* at *5. The policy required "fifteen-minute checks on inmates until they [were] cleared by [mental health] professionals." *Id.* at *3. And it found RGCJ officers "kept a log specific to [Mr.] Sawyers entitled 'Suicide Watch-15 Min.,'" *id*. at *2, which is in the record, *see* App. at 1965.

Because the officers contest "a question of fact" on interlocutory appeal, we lack jurisdiction to consider this argument. *See Burke*, 935 F.3d at 992 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact . . . ." (quoting *Farmer*, 511 U.S. at 842)).

21

### 2) Disregard of an excessive risk to inmate health

The officers argue they were not deliberately indifferent because "their collective watch over [Mr. Sawyers] never wavered to intervals longer than the required fifteen minutes."  Aplt. Br. at 32 (quotations omitted); *see id.* 32-35.  They assert (1) "that there is no evidence to the contrary," *id.* at 32; (2) "the Hand/Bruder log" does not contradict their sworn testimony that they were distributing medication "at approximately 9:00 P.M. on December 2," *id.* at 35; and (3) they "repeatedly contacted SLVMH seeking the advice of mental health professionals," *id.* at 31, and "not one of the clinicians or the physician who evaluated [Mr. Sawyers] mandated any form of medical treatment," Aplt. Reply Br. at 14.

As to each of these factual contentions, the district court found a reasonable jury could infer facts to conclude otherwise.  Based on the officers' "failure to document their whereabouts for several hours during the relevant time," the court concluded a reasonable jury could infer "that [the officers] were not duly monitoring [Mr.] Sawyers as they should have been for up to several hours."  *Sawyers,* 2019 WL 2327756, at *5.  The court said this was "a period long enough to permit the subsequent inference that they may have recklessly left unmonitored an inmate whom they had very good reason to believe could be a danger to himself."  *Id.*

The court further noted that, "contrary to [the officers'] summary that medication usually goes out at 9:00 p.m., the Hand/Bruder log reflects that the medicine was prepped as early as 7:40 p.m. on the day in question and at varying

22

times on other days." *Id.* "[T]he log entries from other days show up to two hours between medication prepping and distribution." *Id.* And the court found SLVMH professionals told officers "to monitor [Mr. Sawyers] closely." *Id.* at *4.

The court concluded "[t]here is too much factual deviance for [it] to be comfortable entering judgment in the[] officers' favor at this juncture." *Id.* at *5. The officers question the court's factual inferences, but on interlocutory appeal, we cannot "second-guess[] the district court's determinations regarding whether [Mr. Sawyers] has presented *evidence* sufficient to survive summary judgment." *Fancher*, 723 F.3d at 1199 (quotations omitted).[13]

\* \* \* \*

Because the officers attack the district court's factual determinations regarding deliberate indifference, we lack jurisdiction to consider their challenge to the first prong of qualified immunity on interlocutory review. *See id.* at 1200. The court's summary judgment ruling on the first prong of qualified immunity—constitutional violation—therefore stands.

---

[13] The officers also generally contend Mr. Sawyers "has produced *no material evidence* in the record to establish that his Eighth Amendment rights were in any way violated by [them]." Aplt. Br. at 41 (emphasis in original). "[He] simply argues that is the case." *Id.* They dispute that "testimonial and documentary evidence," including the Hand/Bruder log, creates a "genuine issue of material fact." *Id.* at 42. This argument fails, too. As noted, we "lack[] jurisdiction at this stage to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide." *Fancher*, 723 F.3d at 1199 (quotations omitted).

23

b.  *Clearly established law*

Due to their inadequate briefing, the officers have waived an argument that the district court erred in finding that clearly established law supported a deliberate indifference violation under 42 U.S.C. § 1983.  We have appellate jurisdiction to consider the abstract issue of whether the law was clearly established.[14]

"Issues not raised in the opening brief are deemed abandoned or waived." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) (quotations omitted).  "This briefing-waiver rule applies equally to arguments that are inadequately presented in an opening brief . . . [, such as those presented] only in a perfunctory manner."  *United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (quotations omitted); *see United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) (declining to address arguments that were "nominally raised in the Appellant's Brief").  "Consistent with these principles is the general rule that appellate courts will not entertain issues raised for the first time on appeal in an appellant's reply brief." *Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) (quotations omitted); *see Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005).

---

[14] "The denial of qualified immunity to a public official . . . is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law."  *Fancher*, 723 F.3d at 1198.  Abstract issues of law include whether "the law allegedly violated by the defendant was clearly established at the time of the challenged actions."  *Id.* (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997)).

24

The district court determined "it is . . . clearly established by Tenth Circuit precedent that [Mr.] Sawyers is entitled to protection against deliberate indifference." *Sawyers*, 2019 WL 2327756, at *6 (citing *Garcia v. Salt Lake Cty.*, 768 F2d 303, 307 (10th Cir. 1985) and *Martin v. Bd. of Cty. Comm'rs*, 909 F.2d 402 (10th Cir. 1990)). The officers fail to challenge this holding in their opening brief. *See Tran*, 355 F.3d at 1266. Although they describe the law of qualified immunity, including the clearly established law requirement, *see* Aplt. Br. at 28, 39-40, they present only a cursory statement in the "Summary of the Argument" section that Mr. Sawyers was unable to establish clearly established law, *see id.* at 26. Nowhere in their "Argument" section do they address this perfunctory contention, much less rebut the two cases cited by the district court. *See id.* at 39-43. A cursory half-sentence does not suffice. *See Walker*, 918 F.3d at 1151.

Although the officers argue in their reply brief that Mr. Sawyers "produced no Tenth Circuit or United States Supreme Court case law . . . tending to show that the right . . . was clearly established at the time of the alleged misconduct," Aplt. Reply Br. at 23, this argument is too little, too late. *See Silverton Snowmobile Club*, 433 F.3d at 783. The officers thus waived a challenge to the district court's clearly-established-law holding.

B.  *Sovereign Immunity under State Law*

Appellants argue the county is entitled to immunity under the Colorado Governmental Immunity Act ("CGIA"), thereby barring Mr. Sawyers's official capacity negligence claim.  We disagree.

1. **Legal Background**

    a.  *Appellate jurisdiction*

As with the denial of § 1983 qualified immunity, "[p]ursuant to the federal collateral order doctrine, we have subject matter jurisdiction to hear 'appeals of orders denying motions to dismiss where the motions are based on [state-law] immunity from suit.'"  *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.* ("*Aspen Orthopaedics*"), 353 F.3d 832, 837 (10th Cir. 2003) (quoting *Decker v. IHC Hosps., Inc.*, 982 F.2d 433, 435 (10th Cir. 1992)).  "State law governs the scope of the immunity at issue (*i.e.*, whether the immunity is 'immunity from suit' or merely 'immunity from liability')."  *Id.*[15]  The relevant state law here is "[t]he

---

[15] To the extent *Aspen Orthopaedics* might conflict with *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1223 (10th Cir. 2019) (dismissing challenge to denial of CGIA immunity because appellant failed to show appellate jurisdiction), we follow the older precedent.  *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.").

CGIA, [which] as applied to governmental entities . . . , offers immunity from suit."

*Id.*[16]

b. *Colorado Governmental Immunity Act*

The CGIA governs whether a public entity or public employee can assert statutory immunity to a negligence claim. *See* Colo. Rev. Stat. Ann. § 24-10-102; *State v. Nieto*, 993 P.2d 493, 506 (Colo. 2000) (en banc).[17] Under the CGIA, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort" unless sovereign immunity is waived. Colo. Rev. Stat. Ann. § 24-10-106(1). Colorado considers this statutory immunity to be sovereign immunity from suit. *See Martinez v. Estate of Bleck*, 379 P.3d 315, 317, 320-22 (Colo. 2016) (noting CGIA confers "sovereign immunity").

A public entity waives sovereign immunity "in an action for injuries resulting from . . . [t]he operation[18] of any . . . correctional facility . . . or jail." Colo. Rev.

---

[16] "Because the district court exercised supplemental jurisdiction over the state-law claim[], we apply the substantive law of the forum state, here Colorado." *Glasser v. King*, 721 F. App'x 766, 769 (10th Cir. 2018) (unpublished) (cited for persuasive value, *see* 10th Cir. R. 32.1 and Fed. R. App. P. 32.1); *see Husk*, 919 F.3d at 1222 (considering CGIA immunity for Colorado tort claim asserted in federal action).

[17] A public entity means "any county, city and county, municipality, . . . and every other kind of . . . agency, instrumentality, or public subdivision thereof . . . ." Colo. Rev. Stat. Ann. § 24-10-103(5). A "'public employee' means an officer [or] employee . . . of the public entity." *Id.* § 24-10-103(4)(a).

[18] "'Operation' means the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law

27

Stat. Ann. § 24-10-106(1)(b). This waiver "appl[ies] to claimants who are incarcerated but not yet convicted of the crime for which such claimants are being incarcerated if such claimants can show injury due to negligence." *Id.* § 24-10-106(1.5)(b).[19]

As the Appellants point out, sovereign immunity for a public entity is not waived "where the injury arises from the act, or failure to act, of a public employee where the act is the type of act for which the public employee would be or heretofore has been personally immune from liability." *Id.* § 24-10-106(2); *see* Aplt. Br. at 45. "[A] public entity shall also have the same immunity as a public employee for any act or failure to act for which a public employee would be or heretofore has been personally immune from liability." Colo. Rev. Stat. Ann. § 24-10-106(3).

But under the CGIA, "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton, except as provided by this article." *Id.* § 24-10-105(1); *see id.* § 24-10-118(2)(a). And "no such immunity may be asserted in an action for injuries resulting from the circumstances specified in section 24-10-106(1)." *Id.* § 24-10-118(2)(a).

_____

with respect to the purposes of any . . . jail . . . ." Colo. Rev. Stat. Ann. § 24-10-103(3)(a).

[19] By contrast, waiver "does not apply to claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction." Colo. Rev. Stat. Ann. § 24-10-106(1.5)(a).

28

Under § 24-10-106(1)(b), immunity is waived "for injuries resulting from . . . [t]he operation of any . . . correctional facility . . . or jail." *Id.* § 24-10-106(1)(b).

2. **Additional Procedural History**

The district court granted summary judgment to the sheriff and the officers for the state law negligence claim "to the extent" they were sued in their individual capacities. *Sawyers*, 2019 WL 2327756, at *6. The court noted that they "were clearly acting within the scope of their employment at all relevant times," so they cannot be liable based on Colo. Rev. Stat. Ann. § 24-10-105. *Id.* The court, however, denied summary judgment on the official capacity negligence claim because "sovereign immunity is waived by a public entity in an action for injuries resulting from the operation of a correctional facility." *Id.* at *7 (citing Colo. Rev. Stat. Ann. § 24-10-106(1)(b)).

3. **Analysis**

We have appellate jurisdiction under the collateral order doctrine to review the denial of sovereign immunity to the county on Mr. Sawyers's negligence claim. *See Aspen Orthopaedics*, 353 F.3d at 837; *see also Martinez*, 379 P.3d at 320 (noting CGIA confers "sovereign immunity"). "We review questions of CGIA immunity de novo." *Glasser v. King*, 721 F. App'x 766, 769 (10th Cir. 2018) (unpublished); *see Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) ("We review de novo the legal question of when a party can assert sovereign immunity.").

29

The district court properly construed the official capacity claim as one against the county,[20] and it properly denied sovereign immunity to the county under the CGIA. Because Mr. Sawyers's injuries occurred due to the alleged "omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions . . . of a[] . . . jail," Colo. Rev. Stat. Ann. § 24-10-103(3)(a), the county may not assert immunity, *id.* § 24-10-106(1)(b). As a pretrial detainee, Mr. Sawyers was "incarcerated but not yet convicted of [a] crime," so the waiver of the county's immunity applies "if [he] can show injury due to negligence." *Id.* § 24-10-106(1.5)(b). Appellants did not contest in their summary judgment motion that Mr. Sawyers could show injury due to negligence. *See* Aplt. Br. at 43-45. The county's sovereign immunity is therefore waived. *See id.* § 24-10-106(1)(b).

Appellants argue that the county has immunity under the CGIA based on their personal immunity. Aplt. Br. at 45 (citing Colo. Rev. Stat. Ann. § 24-10-106(2)). They contend that, "because they have personal immunity for their actions in this matter, and [Mr. Sawyers's] claim is brought against them for their actions (or lack, thereof), [the county's] immunity is not waived in this specific instance" under the CGIA. *Id.*

---

[20] On appeal, Appellants recognize that the state law negligence claim brought against them in their individual capacities has been dismissed, and that the remaining official capacity negligence claim is against Rio Grande County. *See* Aplt. Br. at 43-45.

But they overlook the key relationship between Colo. Rev. Stat. Ann. §§ 24-10-118(2)(a) and 24-10-106(1). Under § 24-10-118(2)(a), "no . . . immunity may be asserted [by a public employee] in an action for injuries resulting from the circumstances specified in section 24-10-106(1)." And § 24-10-106(1)(b) provides that immunity is waived "for injuries resulting from . . . [t]he operation of any . . . correctional facility . . . or jail." *See Glasser*, 721 F. App'x at 770 (noting "correctional employees are not immune" under the CGIA).[21] The Colorado Supreme Court recognized the connection between these statutes in *State v. Nieto*, 993 P.2d 493, 506-07 (Colo. 2000) (en banc).[22] Because Appellants are not personally

---

[21] The district court also overlooked the combination of these provisions when it found Appellants had personal immunity on the individual capacity negligence claim. Mr. Sawyers has not appealed this ruling. The only challenge on appeal about the negligence claim is to the district court's conclusion that the county lacks sovereign immunity. As stated above, because the county as a "public entity" and Appellants as "public employee[s]" have waived immunity under the CGIA because Mr. Sawyers suffered injury in a "jail," *see* Colo. Rev. Stat. Ann. §§ 24-10-106(1)(b), 24-10-118(2)(a), we affirm the denial of summary judgment to the county. The county should not benefit from the district court's mistakenly determining Appellants have personal immunity. Appellants have not argued this determination is law of the case, and even if it were, we are not bound when it is "clearly erroneous." *United States v. Trent*, 884 F.3d 985, 995 (10th Cir. 2018).

[22] *See also Hernandez v. City & Cty. of Denver*, 439 P.3d 57, 60, 62-63 (Colo. App. 2018) (describing the relationship between Colo. Rev. Stat. Ann. §§ 24-10-118(2)(a) and 24-10-106(1) for public employees), *cert. denied*, *Dodson v. Hernandez*, No. 18-839, 2019 WL 1768380 (Colo. Apr. 22, 2019); *see* 16 Theresa L. Corrada and Roberto L. Corrada, *Colo. Practice, Emp't Law & Practice* § 12:33 (3d ed. 2019) (noting § 24-10-106(1) exceptions apply to public employees).

immune under the CGIA as public employees, the claim against the county may proceed.

We therefore affirm the district court's denial of summary judgment to the county on the state law negligence claim.[23]

### III. **CONCLUSION**

We affirm the district court's denial of qualified immunity to Deputy Hart, Sergeant Bruder, and Deputy Hand and the denial of sovereign immunity to Rio Grande County.

---

[23] We note that Colorado enacted legislation on June 19, 2020, that created a new cause of action for state constitutional rights violations by law enforcement. *See* S.B. 217, 72d Gen. Assemb., 2d Reg. Sess. § 3 (Colo. 2020) (enacted) (to be codified at Colo. Rev. Stat. Ann. § 13-21-131). The CGIA "does not apply to" this new cause of action. *Id.* Nor is state "qualified immunity . . . a defense to" it. *Id.* We have reviewed this legislation and have concluded it does not apply to this appeal.