**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

LORI L. VOGT,

      Plaintiff - Appellee,

v.

MCINTOSH COUNTY, OKLAHOMA,
BOARD OF COUNTY
COMMISSIONERS,

      Defendant,

and

LISA RODEBUSH, McIntosh County
Court Clerk, in her individual capacity,

      Defendant - Appellant.

No. 22-7061

_____

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:21-CV-00104-JWB)**
_____

Jordan L. Miller, Collins Zorn & Wagner, PLLC, Oklahoma City, Oklahoma (Wellon B. Poe and Jamison C. Whitson, with him on the briefs), for Appellant Lisa Rodebush.

Mark Hammons, Hammons, Hurst & Associates, Oklahoma City, Oklahoma (Amber L. Hurst, with him on the brief), for Appellee Lori L. Vogt.

_____

Before **MATHESON**, **EBEL**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.

———————————————————

A public official cannot condition a subordinate's employment on her political beliefs, affiliation, or non-affiliation, unless the government has a vital interest in doing so.  To allow otherwise would flout the First Amendment.  Here, Defendant, a county clerk, demanded Plaintiff, her deputy, offer Defendant's campaign full and open support.  When Plaintiff declined, Defendant fired her.  Defendant asserted qualified immunity, and the district court denied her motion for summary judgment.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Plaintiff Lori Vogt and Defendant Lisa Rodebush worked together for thirteen years at the McIntosh County Clerk's Office in Eufaula, Oklahoma.[1]  When the previous McIntosh County Court Clerk retired in 2016, Plaintiff and Defendant both ran for the open position.  Defendant won the election and retained Plaintiff as a Deputy Court Clerk.

Defendant sought reelection in 2020.  In anticipation of the election filing period, Defendant asked Plaintiff whether Plaintiff intended to challenge Defendant for the position.  Plaintiff told Defendant she did not intend to run again, and that she would instead support Defendant's reelection campaign.

True to her word, Plaintiff did not file for election.  But Plaintiff's best friend, a former employee of the County Court Clerk's Office, sought election as Court

---

[1] Although Plaintiff also sued the McIntosh County Board of Commissioners, the Board is not involved in this appeal.

2

Clerk. Plaintiff immediately informed Defendant that, although Plaintiff still supported Defendant's reelection privately, she would not support Defendant's campaign publicly to preserve her friendship with Defendant's opponent.

Even so, Plaintiff campaigned door-to-door for Defendant, appeared in photos for Defendant to use in campaign materials, and advised the campaign on t-shirt design and promotional material distribution. But Plaintiff refused to openly support Defendant's campaign and to comment or post about her support on Facebook. Defendant complained that Plaintiff must have "forgotten what support was" because Plaintiff did not advocate openly for Defendant's reelection. Plaintiff offered discrete forms of advice and assistance but reminded Defendant that she would not support Defendant's campaign openly. Defendant told Plaintiff, "[I]f you can't support me that way openly, I would just rather you not say anything." From that point, Defendant ignored Plaintiff around the office. Defendant continued ignoring Plaintiff even after Defendant won reelection. Twenty days after winning reelection, Defendant fired Plaintiff.

Plaintiff filed this lawsuit under 42 U.S.C. § 1983, alleging Defendant violated Plaintiff's First Amendment rights of free speech and political affiliation.[2] Defendant moved for summary judgment, raising qualified immunity as a defense.

---

[2] Plaintiff also claimed Defendants violated the Oklahoma Constitution. The district court granted Defendants' motion for summary judgment as to this claim and Plaintiff did not appeal.

3

The district court denied the motion.  Defendant appeals the district court's denial of qualified immunity.

II.

We have jurisdiction under 28 U.S.C. § 1291 to review "all final decisions of the district courts of the United States."  Ordinarily, "[o]rders denying summary judgment are . . . not appealable final orders for purposes of 28 U.S.C. § 1291."  Roosevelt-Hennix v. Prickett, 717 F.3d 751, 753 (10th Cir. 2013) (citing Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1266 (10th Cir. 2013)).  But, because the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291," we have jurisdiction over this appeal.  See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

We review de novo a district court's denial of summary judgment.  Duda v. Elder, 7 F.4th 899, 910 (10th Cir. 2021) (quoting Sawyers v. Norton, 962 F.3d 1270, 1282 (10th Cir. 2020)).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The district court's factual findings and reasonable assumptions comprise 'the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity.'"[3]

---

[3] Defendant presents a version of the facts that deviates from the district court's findings of fact at summary judgment.  We cannot reweigh the evidence for two reasons.  First, our jurisdiction over this interlocutory appeal extends only to issues of law.  See Mitchell, 472 U.S. at 530. Second, as is proper at summary judgment, the district court "view[ed] the facts in the light most favorable to [Plaintiff] and resolve[d] all factual disputes and reasonable inferences in [Plaintiff's]

4

Cox v. Glanz, 800 F.3d 1231, 1242 (10th Cir. 2015) (quoting Fogarty v. Gallegos, 523 F.3d 1147, 1154 (10th Cir. 2008)).  To defeat a claim of qualified immunity on summary judgment, Plaintiff must raise a genuine issue of material fact that "(1) [D]efendant's actions violated [Plaintiff's] constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged misconduct."  Paugh v. Uintah Cnty., 47 F.4th 1139, 1153 (10th Cir. 2022) (quoting Est. of Beauford v. Mesa Cnty., 35 F.4th 1248, 1261 (10th Cir. 2022)).

### III.

### A.

We first decide whether Defendant's actions violated Plaintiff's constitutional or statutory rights.  We hold that Defendant violated Plaintiff's First Amendment right to political affiliation.

In Elrod v. Burns, 427 U.S. 347, 359 (1976), the Supreme Court held that a public employer inhibits constitutionally protected belief and association where it terminates an employee "for failure to provide [political] support."  The Supreme Court reaffirmed this rule in Branti v. Finkel, 445 U.S. 507, 515 (1980), holding that public employers cannot condition employment on political affiliation because, "[i]f

---

favor."  Duda, 7 F.4th at 905 (quoting Henderson v. Glanz, 813 F.3d 938, 952 (10th Cir. 2015)).  We only depart from the district court's summary judgment factfinding where the factfinding is "blatantly contradicted by the record, so that no reasonable jury could believe it."  Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1312 (10th Cir. 2009) (quoting York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)).  Because the district court's factfinding is supported by the record, we operate within the facts as found by district court.

the First Amendment protects a public employee from discharge based on what he has said, it must also protect him from discharge based on what he believes."

In light of these precedents, courts evaluate all First Amendment free association retaliation claims under the "Elrod/Branti test." See, e.g., Roberts v. Winder, 16 F.4th 1367, 1381 n.4 (10th Cir. 2021). Under this test, "[t]he First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1451 (10th Cir. 1997) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 68–69 (1990)), overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495, 497 (10th Cir. 2011). Defendant does not argue that the work of a McIntosh County Deputy Court Clerk requires political allegiance. So the only pertinent inquiry is whether Defendant discriminated against Plaintiff based on Plaintiff's political beliefs, affiliation, or non-affiliation.

The Supreme Court has held that public employers violate an employee's First Amendment right of political affiliation if they "fire a public employee as a penalty for refusing a request for political . . . support." O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 720 (1996) (citing Branti, 445 U.S. at 516). We have likewise held that an elected official violates an employee's First Amendment rights if the official terminates the employee for choosing not to politically affiliate with the official. Gann v. Cline, 519 F.3d 1090, 1094 (10th Cir. 2008) (citing Mason, 115 F.3d at 1451 n.5 (10th Cir. 1997)). We have also held that a public employer

6

unlawfully discriminates on the basis of political affiliation when she discharges an employee because of the employee's "position regarding a particular candidate for office." Snyder v. City of Moab, 354 F.3d 1179, 1184–85 (10th Cir. 2003).

Here, the district court found "evidence from which a reasonable jury could find that Plaintiff's political affiliation or beliefs were a substantial or motivating factor in her dismissal." In other words, a genuine issue of material fact exists as to whether Defendant terminated Plaintiff's employment for speech or conduct protected by the First Amendment, violating Plaintiff's First Amendment rights to political affiliation under the Elrod/Branti test. So, Plaintiff has overcome the first prong of the qualified immunity analysis at the summary judgment stage.

B.

Even though Plaintiff has shown a genuine issue of material fact that Defendant violated Plaintiff's constitutional right, Defendant may still receive qualified immunity if the right alleged was not clearly established at the time of the violation. See Paugh, 47 F.4th at 1153 (citing Grissom v. Roberts, 902 F.3d 1162, 1167 (10th Cir. 2018)). So, we next determine whether Plaintiff's right was clearly established when Defendant violated it.

"[I]n order for [a right] to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992) (citing Stewart v. Donges, 915 F.2d 572, 582–83 (10th Cir. 1990)), overruled on other

7

grounds by Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998), as recognized in Cummings v. Dean, 913 F.3d 1227, 1240 (10th Cir. 2019), and Morris v. Noe, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012). This principle "does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). "[A] right is clearly established when a precedent involves 'materially similar conduct' or applies 'with obvious clarity' to the conduct at issue." Apodaca v. Raemisch, 864 F.3d 1071, 1076 (10th Cir. 2017) (emphasis removed) (quoting Est. of Reat v. Rodriguez, 824 F.3d 960, 964–65 (10th Cir. 2016)). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable [official] that the conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Defendant argues that the binding precedent does not put a reasonable official on notice that the First Amendment protects public employees from termination for failure to "publicly support" a candidate. We disagree. Supreme Court precedent clearly establishes that the First Amendment protects public employees from termination "as a penalty for refusing a request for political . . . support." O'Hare, 518 U.S. at 720. Whether an employee refuses a candidate all support, or only some forms of support, the employee is exercising her First Amendment right of political affiliation by refusal. This right is intrinsic to public employees' broader right to be free "from discrimination based upon their political beliefs, affiliation, or non-

8

affiliation." <u>Mason</u>, 115 F.3d at 1451.  We have recognized that the First

Amendment prohibits an elected official from "hir[ing] those who support or affiliate

with him and terminat[ing] those who do not." <u>Gann</u>, 519 F.3d at 1094 (citing

<u>Mason</u>, 115 F.3d at 1451 n.5).  Accordingly, a reasonable official in Defendant's

situation would be on notice that she could not make employment decisions based on

Plaintiff's refusal to provide support, whether partial or complete.  Thus, controlling

precedent clearly established Plaintiff's violated right at the time of the violation and

Plaintiff has satisfied both requirements to defeat a claim of qualified immunity at

summary judgment.  <u>See</u> <u>Paugh</u>, 47 F.4th at 1153 (quoting <u>Mesa Cnty.</u>, 35 F.4th at

1261).

AFFIRMED.