FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WENDY LOVE; JAY HAMM,

    Plaintiffs - Appellees,

v.

MATHEW GRASHORN,

    Defendant - Appellant.

No. 23-1397

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:21-CV-02502-RM-NRN)**

_____

Jonathan Neal Eddy, Denver, Colorado (Jonathan M. Abramson and Yulia Nikolaevskaya, Denver, Colorado, with him on the briefs), for Defendant-Appellant.

Sarah Schielke (Madison Waldrep, Student Attorney, with her on the briefs), The Life & Liberty Law Office, Loveland, Colorado, for Plaintiffs-Appellees.

_____

Before **MATHESON**, **BACHARACH**, and **FEDERICO**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case arose when a police officer shot a pet dog. The parties agree that the shooting implicates the Fourth Amendment. The disagreement involves

- whether a jury could reasonably find that the police officer had violated the Fourth Amendment and

- whether a constitutional violation would have been clearly established.

To resolve these disagreements, we draw guidance from common sense and case law, which would have created a constitutional violation in the absence of an immediate danger.

The district court considered the immediacy of a danger and denied summary judgment to the police officer. In reviewing this ruling, we rely on the district court's assessment of what the jury could reasonably find. Under that assessment, the jury could reasonably find no immediate danger, which would render the shooting a clearly established violation of the Fourth Amendment.

**1.    An officer shoots the plaintiffs' dog.**

The shooting occurred after a business owner called the police, reporting a truck in his parking lot after business hours.

In response, Officer Mathew Grashorn came to investigate. Upon entering the parking lot, he saw a truck owned by the plaintiffs, Ms. Wendy Love and Mr. Jay Hamm. The officer parked and got out of his

2

car. A large dog (Bubba) had been lying on the ground, but got up and ran toward Officer Grashorn.

Officer Grashorn pointed his gun at Bubba. Mr. Hamm called for Bubba, and the dog returned to his owners. Another dog (Herkimer) then emerged from the truck, darting toward Bubba and then running toward Officer Grashorn. When Herkimer was a few feet away, Officer Grashorn fired two shots, injuring the dog. Herkimer was later euthanized as a result of the injuries.

## 2.    The district court rejects the officer's argument for qualified immunity.

Ms. Love and Mr. Hamm sued Officer Grashorn for violating the Fourth Amendment,[1] and he moved for summary judgment based on qualified immunity. The district court denied Officer Grashorn's motion; and he appeals, contending that

- the shooting of Herkimer was reasonable because the dog posed an imminent danger,

- Officer Grashorn didn't violate a clearly established right, and

- Officer Grashorn had qualified immunity even if he had been mistaken about the danger.

---

[1]    Ms. Love and Mr. Hamm also sued other parties and asserted other claims. The other parties and claims aren't involved in the appeal.

3.    **Our review is based on the district court's conclusions about what a reasonable jury could find.**

In addressing the denial of summary judgment, we conduct de novo review, applying the same standard that governed in district court. *See Grubb v. DXP Enters., Inc.*, 85 F.4th 959, 965 (10th Cir. 2023). Under that standard, Officer Grashorn is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Officer Grashorn asserted qualified immunity, the plaintiffs bear the initial burden of showing that (1) Officer Grashorn violated the Constitution and (2) this violation was clearly established. *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).

In assessing the plaintiffs' effort to satisfy that burden, we can consider only "abstract questions of law." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021). Generally, it is the district court's job, not ours, "to determine which facts a jury could reasonably find from the evidence presented to it by the litigants." *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2012).

The district court concluded that a jury could reasonably find that Herkimer had not posed an immediate danger to Officer Grashorn because

- Herkimer had not been *at large*,

4

- Ms. Love and Mr. Hamm may have been able to gain control of the dog,

- a reasonable officer in Officer Grashorn's position could have used non-lethal means to avoid any danger, and

- Officer Grashorn had time to respond differently.

Appellant's App'x vol. 6, at 1065.

On an appeal from the denial of qualified immunity, we rely on this universe of facts unless an exception applies. *See Lewis*, 604 F.3d at 1225. Three exceptions exist:

1. The district court fails to identify the facts underlying the decision.

2. The district court's version of events is blatantly contradicted by the record.

3. The district court based its factual conclusions on a legal error.

*McWilliams v. DiNapoli*, 40 F.4th 1118, 1122 (10th Cir. 2022).

Officer Grashorn acknowledges that we are not ordinarily "at liberty to review a district court's factual conclusions." Appellant's Opening Br. at 19 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008)). But he contends that we shouldn't confine ourselves to the district court's universe of facts because

- the existence of an immediate danger and *at large* status are legal questions and

5

- the district court didn't identify facts that could have vitiated an immediate danger.[2]

We reject both contentions.

The existence of an immediate danger is an issue of fact, not law. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1364 (10th Cir. 2024) (observing that "we have previously characterized the reasonableness of an officer's belief that the plaintiff posed a threat as a factual question"); *Finch v. Rapp*, 38 F.4th 1234, 1242 (10th Cir. 2022) ("Whether [the officer] reasonably believed [the plaintiff] presented any threat is a genuine issue of fact for the jury to determine."). So we are bound by the district court's conclusion that the jury could reject the presence of an immediate danger. *See Packard v. Budaj*, 86 F.4th 859, 866–67 (10th Cir. 2023) (explaining that the court was "bound" by the district court's finding as to "whether officers 'reasonably believed' a subject 'presented any threat'" (quoting *Finch v. Rapp*, 38 F.4th 1234, 1242 (10th Cir. 2022))).

---

[2]    Officer Grashorn also argues that the plaintiffs' "version of events" is contradicted by the record. Appellant's Reply Br. at 12. But in an interlocutory appeal like this one, we consider whether the record contradicts the court's factual conclusions rather than the plaintiffs' version of events. *See* p. 4, above. And Officer Grashorn doesn't argue that the record contradicts the district court's factual conclusions. In any event, the record doesn't blatantly contradict the district court's conclusions about what a reasonable jury could find.

6

The district court also drew conclusions about the possibility that Herkimer had been *at large*. The court appeared to use the term *at large* in the general sense of being free and outside the owner's control.[3] Though the court apparently used the term in a general sense, a dog's *at large* status may involve a legal characterization for purposes of municipal ordinances. For example, Larimer County, which is where the incident took place, has an ordinance classifying a dog as *at large* if the dog hadn't immediately responded to the owner's command. Larimer Cnty. Code, art. I, § 6-1. But our case doesn't involve enforcement of Larimer County's ordinance, and the district court didn't suggest that it was relying on the county's use of the term *at large*.

---

[3]     The district court's use of the term *at large* comports with the definitions used in leading legal dictionaries. One such dictionary defines *at large* status "in the legal sense" as "someone or something unconfined, unsupervised, and generally at liberty. Thus, an animal at large is either not in confinement or not under the supervision of a minder but free to roam (even if it becomes stuck elsewhere than its owner's pen by its own volition)." I *Bouvier's Law Dict.* (Sheppard gen. ed. 2012). Another leading legal dictionary defines *at large* as "[f]ree; unrestrained; not under control." *Black's Law Dictionary* (11th ed. 2019) (Garner gen. ed.).

State courts have defined the term *at large* in a similar way. For example, the Connecticut Supreme Court has concluded that animals are *at large* when they "are suffered to roam about without a keeper and without restraint." *Dixon v. Lewis*, 109 A. 809, 810 (Conn. 1920). And the Oregon Supreme Court has characterized animals as *at large* when they "roam and feed at will, and are not under the immediate control of anyone." *Keeney v. Or. Ry. & Nav. Co.*, 24 P. 233, 234 (Ore. 1890).

7

Granted, the district court may have relied partly on the legal meaning of the term *at large*. Even if the court had used the legal meaning, however, classification of Herkimer as *at large* would turn on facts, creating a mixed question of law and fact. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227 (2020). "Mixed questions are not all alike." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395–96 (2018). Some mixed questions "require courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard." *Id.* at 396. Other mixed questions require courts to weigh "case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address . . . 'narrow facts that utterly resist generalization.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 561–62 (1988)); *see United States v. Norton*, 130 F.4th 824,  834 (10th Cir. 2025) (applying this distinction between mixed questions based on whether the determination is primarily legal or factual).

The district court may have considered the legal definition of *at large*, but applied that definition based on factual conclusions involving

- whether the owners had been available and willing to assert control over the dog and

- "what Herkimer would have done had he not been shot."

Appellant's App'x vol. 6, at 1065. Given the primacy of these factual conclusions, we are bound by the district court's universe of facts

8

involving the plaintiffs' ability to control Herkimer. *See* p. 5, above; *see also DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 952 F.2d 661, 665 (2d Cir. 1992) (concluding that if a defense of qualified immunity presents "mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the district court's resolution of the factual questions").

We also reject Officer Grashorn's contention that the district court failed to identify the material facts that a jury could find. The court pointed to three factual conclusions that could be drawn:

1. The plaintiffs were available and willing to assert control over Herkimer.

2. Officer Grashorn had time to consider non-lethal options to stop Herkimer.

3. Herkimer posed no immediate danger to Officer Grashorn.

So in considering Officer Grashorn's arguments for qualified immunity, we accept the district court's view of the facts that a jury could reasonably find.

**4.    We lack jurisdiction to consider Officer Grashorn's version of the facts.**

Officer Grashorn challenges the district court's conclusion that a jury could regard the shooting as unreasonable. For this challenge, we conduct

9

de novo review. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1364 (10th Cir. 2024).

We have held that "[k]illing a dog meaningfully and permanently interferes with the owner's possessory interest." *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016). Given the interference with a possessory interest, the killing violates an owner's rights under the Fourth Amendment "absent a warrant or some exception to the warrant requirement." *Id.* A warrant is unnecessary when exigent circumstances exist, such as "th[e] need to guarantee the safety of [police officers] and others." *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004).

Officer Grashorn contends that he acted reasonably under the circumstances because

- Herkimer had posed an immediate danger,

- there hadn't been enough time to find a non-lethal solution, and

- Herkimer had been *at large*.

These arguments contradict the district court's universe of facts[4]:

---

[4]    Officer Grashorn also argues "that Herkimer was a Pitbull and Pitbulls can be at times unpredictable even if they appear friendly." Appellant's Reply Br. at 16. The parties disagree on Herkimer's breed, but the district court acknowledged that the dog "looked like a pit bull, a breed that is widely perceived as unpredictable and dangerous." Appellant's App'x vol. 6, at 1065.

| Officer Grashorn's Argument | District Court's Factual Conclusion |
|---|---|
| Danger was imminent | Danger was not imminent |
| "The imminency of danger perceived by Appellant is depicted in his [body-worn-camera-footage]. Appellant had 3 seconds to make a decision as to a course of action." Appellant's Opening Br. at 30 (bolding omitted). | "Although a reasonable jury could decide that Herkimer posed a danger to Defendant demonstrating the 'type of tense, rapidly evolving situation where allowance is given for the police to make a split-second decision,' it could also decide that he did not pose an immediate danger." Appellant's App'x vol. 6, at 1066. |
| No non-lethal options existed | Non-lethal options existed |
| "Prior to shooting, Appellant considered alternatives other than deadly force, but he did not have time to use other alternatives because of how fast the incident unfolded and he also ruled them out as ineffective under the circumstances." Appellant's Opening Br. at 4. | "Although the situation evolved rapidly, the circumstances do not conclusively establish that a reasonable officer in Defendant's position could not have used non-lethal means available to avoid whatever danger the approaching dog posed. At the very least, it is debatable whether Defendant had enough time to respond differently." Appellant's App'x vol. 6, at 1066. |
| "The [body-worn-camera] footage clearly shows there was no time to find an alternative solution to control Herkimer, as the entire incident unfolded in three (3) seconds." Appellant's Opening Br. at 26 (bolding omitted). | |
| "Appellant did not want to take a chance with alternative methods because they might not have worked, and he did not have time to transition to an alternative." Appellant's Opening Br. at 26. | |

| Herkimer was *at large* | Herkimer was not *at large* |
|---|---|
| "Herkimer was 'at-large' and not on his own property." Appellant's Opening Br. at 14. | "First, a reasonable fact finder could conclude that Herkimer was not 'at-large' when Defendant shot him. Although he was unleashed on private property, his owners were present, and they had already successfully called off one of their other dogs. It is impossible to know what Herkimer would have done had he not been shot, but the circumstances do not conclusively establish that he was 'at-large.'" Appellant's App'x vol. 6, at 1065. |
| "Here, Appellant did show that Herkimer was indeed 'at-large' at the time of the shooting because 1) he was not physically controlled by a human via a leash while on someone else's property and 2) because he did not respond to a verbal command of the accompanying person." Appellant's Opening Br. at 23. | |

We lack jurisdiction to reverse based on Officer Grashorn's version of the facts. *See Castillo v. Day*, 790 F.3d 1013, 1018 (10th Cir. 2015) (dismissing an appeal based on "[a defendant's] version of the facts and the inferences that can be drawn therefrom").[5]

---

[5]    We do have jurisdiction to

- consider the district court's conclusions about the facts that a jury could reasonably find and

- determine whether those conclusions would entail a constitutional violation.

**5.    Under the district court's universe of facts, a constitutional violation would have been clearly established.**

Officer Grashorn also argues that a constitutional violation wouldn't have been clearly established. For this argument, we conduct de novo review. *See Clerkley v. Holcomb*, 121 F.4th 1359, 1364 (10th Cir. 2024).

A right is *clearly established* if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). A claimant can typically show a clearly established violation by identifying a factually similar precedent already in existence. *See Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021). A right may also be clearly established by the "consensus of cases of persuasive authority" from other jurisdictions. *Ullery v. Bradley*, 949 F.3d 1282, 1294 (10th Cir. 2020) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

But a factually similar case isn't always required. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("[W]e do not require a case directly on point."). Even when a factually similar case doesn't exist, a right may be clearly established when case law applies "with obvious clarity." *United States v. Lanier*, 520 U.S. 259, 271 (1997).

---

*See Clerkley v. Holcomb*, 121 F.4th 1359, 1363 (10th Cir. 2024). But when Officer Grashorn argues that he didn't violate the Constitution, he relies solely on his version of the facts rather than the district court's conclusions about what a jury could reasonably find.

We must determine the clarity of a constitutional violation based on the district court's universe of facts. Under that universe of facts, Officer Grashorn didn't face an immediate danger and had time to consider non-lethal options. *See* pp. 4–5, above. Officer Grashorn challenges those factual determinations, but we lack jurisdiction to consider those challenges. *See* p. 12, above. So our question is simply whether police officers could reasonably believe that the Fourth Amendment allows them to shoot a dog (without considering non-lethal options) when there's no immediate danger.

In our view, common sense should have alerted police officers that they couldn't shoot a pet dog in the absence of an immediate danger. *See Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) (stating that "common sense . . . counsel[s] that the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable"); *see also Ramirez v. Killian*, 113 F.4th 415, 429 (5th Cir. 2024) (stating that "it is a matter of common sense" that an officer cannot "go around shooting citizens' nonaggressive dogs").

This understanding reflects not only common sense, but also case law recognizing a constitutional violation when a dog poses no immediate danger. *See Ramirez*, 113 F.4th at 428. Other "circuits have invariably concluded that 'the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force

14

is unavoidable.'" *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016)

(quoting *Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008)). For example,

five circuits have considered the issue and recognized a clearly established

constitutional violation when the pet poses no immediate danger[6]:

| Circuit | Case/Year | Clearly-Established Violation | Imminent Danger |
|---|---|---|---|
| 3d | *Brown v. Muhlenberg*, 269 F.3d 205, 211–12 (2001) | Yes | No |
| 4th | *Ray v. Roane*, 948 F.3d 222, 229–30 (2020) | Yes | No |
| 5th | *Ramirez v. Killian*, 113 F.4th 415, 428–29 (2024) | Yes | No |
| 8th | *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (2006) | Yes | No |
| 9th | *Criscuolo v. Grant Cnty.*, 540 F. App'x 562, 564 (Aug. 8, 2013) (unpublished) | Yes | No |

The parties did not cite the opinions in

- *Ray v. Roane*,

- *Ramirez v. Killian*, or

- *Criscuolo v. Grant County*.

But once the plaintiffs urged a clearly established right based on the

absence of an immediate danger, we incurred an obligation to conduct our

---

[6]     Another circuit (the D.C. Circuit) has also recognized a constitutional violation when the pet posed no immediate danger. *Robinson v. Pezzat*, 818 F.3d 1, 41–43 (D.C. Cir. 2016).

own legal research to determine the clarity of a constitutional violation. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) (stating that when reviewing rulings on qualified immunity, courts should use full knowledge of their "own [and other relevant] precedents" (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984))).

Until now, we haven't squarely decided whether the Fourth Amendment prohibits the police from shooting a dog in the absence of an imminent danger. But we have addressed the constitutionality of a shooting when the victim is a person (rather than a dog). For example, in *Morris v. Noe*, we concluded that an officer had violated clearly established law by conducting a forceful takedown of the plaintiff. 672 F.3d 1185, 1196–98 (10th Cir. 2012). We found no cases involving the kind of force used by the officer. *Id*. But based on the facts assumed by the district court, the plaintiff had posed no threat to the officers and had not resisted or fled. *Id*. So we held that the alleged takedown would have violated a clearly established requirement for officers to act reasonably under the circumstances. *Id*. at 1198. The constitutional violation is just as obvious when the shooting involves a dog rather than a person.

Officer Grashorn points out that we lack any binding precedents on this issue. But a general rule may apply with obvious clarity. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008). Here the constitutional prohibition applies with obvious clarity based on common

16

sense, persuasive case law in other circuits, and our precedents addressing the shooting of persons. *See Ray v. Roane*, 948 F.3d 222, 229–30 (4th Cir. 2020) (concluding that a police officer's shooting of a privately owned animal, which doesn't "pose an immediate threat to the officer or others," constitutes a clearly established violation of the Fourth Amendment even without a "directly on-point, binding authority" in the circuit (quoting *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 543 (4th Cir. 2017))); *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1361 (11th Cir. 2024) (concluding that a police officer's shooting of an incapacitated dog, in the absence of a reasonable threat of imminent danger, constituted a clearly established violation of the Fourth Amendment "even in the absence of directly-on-point caselaw").

Granted, officers may enjoy qualified immunity when an aggressive dog poses an immediate threat. *Kendall v. Olsen*, 727 F. App'x 970, 974–75 (10th Cir. 2018) (unpublished); *Mayfield v. Harvey Cnty. Sheriff's Dep't*, 732 F. App'x 685, 689–90 (10th Cir. 2018) (unpublished). For example, we've upheld qualified immunity when the undisputed evidence showed that the dogs posed an imminent danger by behaving aggressively and trying to attack a law-enforcement officer. *Kendall*, 727 F. App'x at 974–75; *Mayfield*, 732 F. App'x at 689–90. Even when appellate courts have upheld qualified immunity for officers shooting dogs, however, the courts have relied on imminent dangers to police officers. *E.g.*, *Brown v.*

17

*Battle Creek Pol. Dep't*, 844 F.3d 556, 568–72 (6th Cir. 2016); *Booker v. Abate*, No. 20-3123, 2021 WL 4622399, at \*2 (7th Cir. Oct. 7, 2021) (unpublished); *Buschmann v. Kansas City Bd. of Pol. Comm'rs*, 76 F.4th 1081, 1084–85 (8th Cir. 2023);[7] *Ex parte City of Vestavia Hills*, 372 So. 3d 1143, 1148–49 (Ala. 2022).

Given common sense, the consensus of case law, and our precedents on the shooting of persons, the availability of qualified immunity turns on the existence of an imminent danger to Officer Grashorn.[8] But the district

---

[7]    Officer Grashorn points to a different Eighth Circuit opinion upholding a grant of qualified immunity. *Bloodworth v. Kan. City Bd. of Police Comm'rs*, 89 F.4th 614, 626–27 (8th Cir. 2023). There too the Eighth Circuit relied on the existence of an imminent danger to police officers. *Id.*

[8]    The district court considered the reasonableness of the shooting based on five factors:

1.    the dog's *at large* status and the availability of the owner to control the dog

2.    the breed of the dog

3.    the existence of time for the officer to find an alternative solution

4.    the availability of non-lethal means to control the dog

5.    the existence of a danger to the officer or the public

Appellant's App'x vol. 6, at 1066 (quoting *Branson v. Price*, No. 13-cv-3090-REB-NYW, 2015 WL 5562174, at \*7 (D. Colo. Sept. 21, 2015) (unpublished)). But neither the Supreme Court nor our court has adopted this five-factor test.

18

court concluded that a jury could reasonably find no immediate danger to Officer Grashorn, rendering a constitutional violation clearly established.

### 6.   The officer's allegation of a mistake does not trigger qualified immunity.

Officer Grashorn argues that an officer might have acted reasonably even if he had mistakenly perceived an immediate danger. We reject this argument because it disregards the district court's universe of facts. The district court concluded that a jury could reasonably find that

- Herkimer had not presented an immediate danger and

- the lack of an immediate danger could support a finding that the officer's conduct had been unreasonable.

*See* pp. 4–5, above. If Officer Grashorn had made an unreasonable mistake, he would not be entitled to qualified immunity. *See Singh v. Cordle*, 936 F.3d 1022, 1033 (10th Cir. 2019) (stating that for qualified immunity, "[a] mistake of fact must . . . be a reasonable one").

To assess the reasonableness of Officer Grashorn's alleged mistake, we must defer to the district court's universe of facts. *Clerkley v. Holcomb*, 121 F.4th 1359, 1363 (10th Cir. 2024). Under that universe of facts, a jury could regard the purported mistake as unreasonable. *See id.* (concluding

---

When considering deadly force against people, we've assessed reasonableness based on a totality of the circumstances. *E.g.*, *Reavis v. Frost*, 967 F.3d 978, 988 (10th Cir. 2020). In considering the reasonableness of deadly force, we assign greatest importance to the threat of serious physical harm to the officer or others. *See id.* We hesitate to tell district courts how to decide whether a dog poses an imminent threat.

that the reasonableness of an officer's mistaken perception involved a question of fact preventing qualified immunity at the summary judgment stage); *accord Floyd v. Detroit*, 518 F.3d 398, 401, 408 (6th Cir. 2008) (concluding that a police officer's mistake in shooting an unarmed man wouldn't trigger qualified immunity through a summary judgment motion because the objective reasonableness of the mistake would have been for the fact-finder to resolve); *Wealot v. Brooks*, 865 F.3d 1119, 1128 (8th Cir. 2017) (concluding that a mistake by police officers, who shot an unarmed man, didn't entitle them to qualified immunity at the summary judgment stage because a reasonable fact-finder could regard the mistake as unreasonable given the existence of conflicting accounts); *Wilkins v. Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (stating that the reasonableness of an officer's factual mistake, for purposes of qualified immunity, "depends on disputed issues of material fact" that are better resolved by a jury rather than the court as a matter of law). So the district court's universe of facts would prevent qualified immunity based on a potential mistake.

\* \* \*

We thus affirm the district court's denial of Officer Grashorn's motion for summary judgment.

20