**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

ESTATE OF RICHARD WARD, by
and through its personal
representative Kristy Ward Stamp;
KRISTY WARD STAMP,

  Plaintiffs - Appellees,

v.

DAVID LUCERO, Pueblo County
Sheriff; DEPUTY CHARLES
MCWHORTER; DEPUTY
CASSANDRA GONZALES; DEPUTY
JACOB MAHAN; DEPUTY
CHRISTINE SPENCER; DEPUTY
NICHOLAS BERUMEN; DEPUTY
ROBERT QUINTANA; SERGEANT
JOSH RAGAN; CAPTAIN SHELLEY
BRYANT, in their individual and
official capacities,

  Defendants - Appellants,

and

PUEBLO COUNTY, COLORADO;
PUEBLO COUNTY BOARD OF
COUNTY COMMISSIONERS,

  Defendants.

No. 25-1224

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:23-CV-00473-CNS-MDB)**

_____

Alex M. Pass (Sean J. Lane, with him on the briefs) of The Lane Law Firm, P.C., Aurora, Colorado, for Defendants-Appellants.

Darold W. Killmer of Killmer Lane, LLP, Denver, Colorado (Reid Allison of Killmer Lane, LLP, Denver, Colorado; Mari Newman and Andy McNulty of Newman McNulty, LLC, Denver, Colorado, with him on the briefs), for Plaintiffs-Appellees.

_____

Before **PHILLIPS**, **McHUGH**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

While investigating criminal activity outside a Pueblo middle school, officers with the Pueblo County Sheriff's Office (PCSO) shot and killed Richard Ward and detained his mother, Kristy Ward Stamp. Mr. Ward's estate and Ms. Ward Stamp sued several PCSO officers (the Officers) under 42 U.S.C. § 1983 for Fourth Amendment violations. The Officers moved for summary judgment, asserting qualified immunity. The district court denied qualified immunity on all applicable claims. The Officers filed an interlocutory appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we dismiss this appeal in part for lack of jurisdiction. We otherwise affirm.

2

# I

## A[1]

On February 22, 2022, the Pueblo County Sheriff's Office received a 911 call seeking assistance at a local middle school. PCSO deputies Charles McWhorter and Cassandra Gonzales responded to the scene. They found thirty-two-year-old Richard Ward in the back seat of a parked vehicle also occupied by his mother, Kristy Ward Stamp. Deputy McWhorter questioned Mr. Ward, asking whether he had identification or any weapons. Mr. Ward said he might have a pocketknife. During questioning, Mr. Ward placed something in his mouth, telling Deputy McWhorter it was "just a pill." RVI.1348. It was later determined to be anti-anxiety medication.

Deputy McWhorter then began to physically remove Mr. Ward from the back of the car. A struggle ensued. Less than 30 seconds later, Deputy McWhorter shot Mr. Ward three times, killing him.

After the shooting, Deputy McWhorter ordered Ms. Ward Stamp, "Stay in the car[.]" RVI.1340. Officers seized Ms. Ward Stamp's cell phone and vehicle, took her to the back of a PCSO car, patted her down twice, handcuffed her, moved her to another PCSO vehicle, drove her to a PCSO

---

[1] We draw the facts in this opinion from those "found or assumed" by the district court's summary judgment order. *See Packard* v. *Budaj*, 86 F.4th 859, 862 n.1 (10th Cir. 2023).

facility, and placed her in a PCSO interview room. Ms. Ward Stamp was detained "for hours[.]" RVI.1343.

### B

Mr. Ward's estate and Ms. Ward Stamp brought a civil rights lawsuit under 42 U.S.C. § 1983 against the Officers, the PCSO, and the Pueblo County Board of Commissioners. As relevant here, the complaint alleged Fourth Amendment claims against the Officers in their personal capacities for excessive force against Mr. Ward, unlawfully arresting Ms. Ward Stamp, and unlawfully seizing Ms. Ward Stamp's property.[2] At the close of discovery, Ms. Ward Stamp moved for partial summary judgment on her federal and state unlawful arrest claims. Defendants cross-moved for summary judgment on all claims. The Officers invoked the defense of qualified immunity, which "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly

---

[2] Before filing the operative Second Amended Complaint, Plaintiffs filed two earlier, non-operative complaints irrelevant to this appeal. The municipal defendants are also irrelevant to this interlocutory appeal, which involves only claims of qualified immunity by officers in their individual capacities. *See Fancher* v. *Barrientos*, 723 F.3d 1191, 1194 n.1 (10th Cir. 2013) ("Qualified immunity . . . is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities." (ellipses in original) (internal quotation marks omitted)). Finally, we note that Plaintiffs brought four other claims under Colorado law, which are likewise not relevant here.

established at the time of the challenged conduct." *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). Relying on that familiar two-step framework, the Officers argued Plaintiffs had failed to carry their burden of showing any violation of a clearly established right under the Fourth Amendment.

The district court granted in part and denied in part both motions for summary judgment. The district court determined a reasonable jury could find:

- Mr. Ward did not resist the deputies before or during the altercation;
- Mr. Ward showed no intention to flee from the deputies;
- Mr. Ward did not reach for Deputy McWhorter's gun;
- Mr. Ward did not tackle Deputy McWhorter during the struggle;
- Mr. Ward did not pose an immediate or credible risk to the deputies when force was used; and
- the deputies lacked a lawful basis to detain Ms. Ward Stamp or seize her property.[3]

The district court found undisputed that Ms. Ward Stamp was not free to leave once deputies told her to stay in her car following the killing of her son and that the deputies lacked probable cause to believe Ms. Ward Stamp had committed a crime.

---

[3] The district court did not describe the relevant factual and procedural background in a specific section of its order. Rather, the order set out factual findings throughout its legal analysis. This approach supplies a sufficient "universe of facts" for our review. *Packard*, 86 F.4th at 862 n.1, 864 n.5.

The district court then denied qualified immunity on the Fourth Amendment claims. As to the excessive-force claim, the district court determined "a reasonabl[e] jury could find Mr. Ward's rights were violated, based on—at a minimum—material factual disputes as to the use of objectively unreasonable force against him, and that his right to be free from the use of excessive force is clearly established." RVI.1352–53 (first citing *Est. of Harmon* v. *Salt Lake City*, 134 F.4th 1119, 1129 (10th Cir. 2025); and then citing *Clerkley* v. *Holcomb,* 121 F.4th 1359, 1367 (10th Cir. 2024)). As to the claims for unlawful seizure of Ms. Ward Stamp and her property, the district court ruled "a reasonable jury could certainly find Ms. Ward Stamp's constitutional rights against unreasonable arrests and seizures were violated[.]" RVI.1353. "It is well settled individuals have a right to be free from unlawful, warrantless arrests," the district court explained, "especially where as here, an individual is detained, without probable cause, for hours without the freedom to leave, and does not resist her detention." RVI.1343 (first citing *Shroff* v. *Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010) ("It has long been established that an arrest and search without probable cause that a crime has been committed violates the Fourth Amendment."); then citing *Hayes* v. *Florida*, 470 U.S. 811, 816 (1985); and then citing *Keylon* v. *City of Albuquerque*, 535 F.3d 1210, 1217

(10th Cir. 2008)); *see* RVI.1352 (incorporating these cases into its qualified-immunity analysis).

The Officers timely appealed.

## II

We review *de novo* a district court's denial of a summary judgment motion asserting qualified immunity. *See Fancher* v. *Barrientos*, 723 F.3d 1191, 1199 (10th Cir. 2013). Urging reversal, the Officers contend the district court, *first*, used the wrong legal framework in adjudicating qualified immunity at the summary judgment stage, and *second*, erroneously determined a reasonable jury could find the Officers violated the clearly established Fourth Amendment rights of Mr. Ward and Ms. Ward Stamp. As to that second argument, the Officers ask us to review the factual record *de novo* because, in their view, the version of events adopted by the district court is "blatantly contradicted" by the record. Before evaluating the merits of the Officers' arguments, however, we must first address our interlocutory jurisdiction.[4] *See Walker* v. *City of Orem*, 451 F.3d

---

[4] Before briefing began, we issued an order "direct[ing] the parties to address with specificity in their briefs whether this court has jurisdiction to review the district court's order denying qualified immunity." *See Est. of Ward* v. *Lucero*, No. 25-1224, Dkt. No. 15, at 2 (10th Cir. June 18, 2025). The Officers' opening brief largely did not respond to the order, and their reply brief failed to discuss jurisdiction at all. We ordered supplemental briefing so the Officers could address our jurisdiction with specificity.

1139, 1154 (10th Cir. 2006) (explaining interlocutory appellate jurisdiction over a summary judgment order denying qualified immunity is a "threshold issue"). Plaintiffs ask us to dismiss this appeal for lack of appellate jurisdiction because the "entire appeal is premised on [the Officers'] own view of the facts[.]" Supp. Resp. Br. at 3. But Plaintiffs' argument sweeps too broadly, as we will explain.

## III

We have jurisdiction to review "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Although an order denying summary judgment is generally not a "final decision" that can be immediately appealed, a summary-judgment order denying qualified immunity is immediately appealable under the collateral-order doctrine. *See Ellis* v. *Salt Lake City Corp.*, 147 F.4th 1206, 1219 (10th Cir. 2025). "The Defendants—appellants here—bear the burden of establishing our jurisdiction to hear this [interlocutory] appeal." *Packard* v. *Budaj*, 86 F.4th 859, 863–64 (10th Cir. 2023) (citing Fed. R. App. P. 28(a)(4)).

Our jurisdiction in this interlocutory context is "narrow" and "circumscribed." *Id.* "We may review *only* 'abstract questions of law.'" *Id.* at 864 (emphasis in original) (quoting *Vette* v. *K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1162 (10th Cir. 2021)); *see Behrens* v. *Pelletier*, 516 U.S. 299, 313 (1996) ("[S]ummary judgment determinations are appealable when they

8

resolve a dispute concerning an abstract issu[e] of law relating to qualified immunity[.]" (emphasis omitted) (internal quotation marks and alterations omitted)). "Abstract issues of law include whether the law allegedly violated by the defendant was clearly established at the time of the challenged actions." *Sawyers* v. *Norton*, 962 F.3d 1270, 1286 n.14 (10th Cir. 2020) (internal quotation marks omitted).[5]

This jurisdictional limitation means "we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Bustillos* v. *City of Artesia*, 98 F.4th 1022, 1027 (10th Cir. 2024) (internal quotation marks omitted). The

---

[5] Our precedent has sometimes been imprecise about what counts as an "abstract issue of law" for purposes of our interlocutory jurisdiction. We have repeatedly recognized two particular "abstract questions of law" in the qualified-immunity context: "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation," and "(2) whether that law was clearly established at the time of the alleged violation." *Vette*, 989 F.3d at 1162 (internal quotation marks omitted). These questions track the two prongs of qualified immunity. *See Ashcroft*, 563 U.S. at 735. To be clear, these questions are merely two examples of abstract legal issues. Our precedent has recognized others. *See, e.g.*, *Coones* v. *Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cnty./Kan. City*, 166 F.4th 1, 22 (10th Cir. 2026) (analyzing, as abstract legal issues, whether "*Brady* imposes a duty only on prosecutors, not on police officers[,]" and whether "an officer cannot be held liable for a *Brady* violation under § 1983 unless the plaintiff proves that the officer acted in bad faith"); *Fletcher* v. *Burkhalter*, 605 F.3d 1091, 1097 (10th Cir. 2010) (analyzing, as an "abstract legal issue . . . whether the acts of the district attorney or the judge can or must be considered superseding causes of . . . [plaintiff]'s injuries").

"facts explicitly found by the district court, combined with those that it likely assumed, . . . form the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Fogarty* v. *Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008). Simply put, "to permit our review at this interlocutory posture, the defendant must . . . be willing to concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Ellis*, 147 F.4th at 1222 (ellipses in original) (internal quotation marks omitted).

Sometimes, a litigant decides to "fight the district court's facts" by "disregarding" inconvenient findings or "proposing their own re-weighing of the rest." *Id.* at 1228. Other times, a party does not facially attack the district court's factfinding so much as marshal "additional facts" the district court never found. *Avant* v. *Doke*, 104 F.4th 203, 207 (10th Cir. 2024). But our limited jurisdiction does not abide such tactics. "To the extent the defendant fails to accept the district court's factual findings and reasonable inferences in crafting their appellate arguments, we must dismiss the appeal for lack of appellate jurisdiction." *Ellis*, 147 F.4th at 1222.

We have recognized three narrow exceptions that permit us to consider the factual record *de novo* in reviewing the denial of qualified immunity: when the district court (1) "failed to identify the factual disputes," (2) "the record blatantly contradicts the court's factual

10

determinations," or (3) "the district court commit[ted] *legal* error en route to [the] *factual* determination[s]." *McWilliams* v. *Dinapoli*, 40 F.4th 1118, 1122 (10th Cir. 2022) (alterations in original) (internal quotation marks omitted). "But absent a narrow exception, we must scrupulously avoid second-guessing the district court's determinations regarding whether the appellee has presented *evidence* sufficient to survive summary judgment." *Ellis*, 147 F.4th at 1222 (internal quotation marks and footnote omitted).

Finally, remember that interlocutory jurisdiction is not all or nothing but exists "to the extent" a given argument allows. *Id.* at 1227; *cf. Morris* v. *Noe*, 672 F.3d 1185, 1189 (10th Cir. 2012) (explaining a case might present multiple issues, "one appealable, and one not"). With these principles in mind, we now consider the Officers' arguments.

## IV

The Officers first contend the district court applied the wrong legal test in adjudicating qualified immunity at summary judgment. According to the Officers, the district court "confuse[d] the two analytical frameworks of qualified immunity and traditional summary judgment." Op. Br. at 31 (internal quotation marks omitted). In their view, the district court failed to "determine whether Plaintiff[s'] factual allegations were sufficiently grounded in the record such that they may permissibly comprise the universe of facts that would serve to answer the legal question before it[.]

11

Aplt. Supp. Br. at 6. "[I]nstead," the Officers say, the district court "utilized the analytic framework reserved only for traditional summary judgment motions." Aplt. Supp. Br. at 6.

The Officers insist we have jurisdiction to review this argument because it alleges only a "legal error." Aplt. Supp. Br. at 4, 7. We agree. "[A]pplying an incorrect legal standard" is "an error of law[.]" *Stenson* v. *Edmonds*, 86 F.4th 870, 877 (10th Cir. 2023). And as the Officers explain, they challenge only "the *methodology* the District Court utilized to reach its conclusion that [they] are not entitled to qualified immunity." Aplt. Supp. Br. at 5. This argument appropriately asks us to resolve an "abstract legal question," *Allstate Sweeping, LLC* v. *Black*, 706 F.3d 1261, 1267 (10th Cir. 2013), and "accept[s] the district court's facts as true[,]" *Ellis*, 147 F.4th at 1227.

On the merits, however, the argument is unavailing. "[W]e review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Clark* v. *Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). "When the defendant has moved for summary judgment based on qualified immunity, we still view the facts in the light most favorable to the non-moving party and resolve all factual disputes and reasonable inferences in its favor." *Henderson* v. *Glanz*, 813 F.3d 938, 952 (10th Cir. 2015). When

a defendant asserts qualified immunity at summary judgment, "the burden shifts to the plaintiff to demonstrate, on the facts alleged, that (1) the defendant violated her constitutional or statutory rights, and (2) the right was clearly established at the time of the alleged unlawful activity." *Castillo* v. *Day*, 790 F.3d 1013, 1019 (10th Cir. 2015) (citing *Pearson* v. *Callahan*, 555 U.S. 223, 232 (2009)). "If the plaintiff cannot meet either part of this burden, the defendant is entitled to qualified immunity." *Id.* "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Nelson* v. *McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000) (internal quotation marks omitted). Reviewing the Officers' appellate arguments in light of these principles, we discern no reversible error.

*First*, we reject the Officers' arguments that reversal is compelled by *Cox* v. *Glanz*, 800 F.3d 1231 (10th Cir. 2015). In *Cox*, the district court had denied the defendants' motion for summary judgment, which asserted a qualified-immunity defense, without "mention[ing] qualified immunity in its summary-judgment order." *Id.* at 1243. As we observed there, "at no point during its analysis did the [district] court explicitly focus on the legal framework of qualified immunity—viz., it did not discuss whether [the

plaintiff] had demonstrated the violation of a clearly established constitutional right by any of the . . . defendants[.]" *Id.* at 1241. On appeal, we proceeded to analyze the merits of the qualified-immunity arguments rather than remanding. *See id.* at 1246–47. The concerns that animated the disposition in *Cox* are not present here. Unlike in *Cox*, the district court analyzed qualified immunity (in a subsection aptly titled "Qualified Immunity"), making findings on both prongs of the inquiry. *See* RVI.1352–53.

*Second,* to the extent the Officers argue the district court "permitted Plaintiffs to elude their heavy two-part burden required to overcome qualified immunity[,]" Op. Br. at 33, we disagree. The district court squarely placed the burden on Plaintiffs to show a clearly established constitutional violation. *See* RVI.1352 ("Of course, in light of Defendants' qualified immunity assertion, *Plaintiffs* must then show as to their challenged claims that a constitutional violation has taken place [and] this violation had been clearly established." (emphasis added) (internal quotation marks omitted)). And the district court found Plaintiffs had carried their burden of showing a reasonable jury could find both a constitutional violation and that the conduct violated a clearly established right. *See* RVI.1352 ("Plaintiffs have shown a reasonable jury could find

14

both constitutional violations and that these violations were clearly established[.]").

*Third*, to the extent the Officers argue the district court misapplied the summary judgment standard by relying on "material factual disputes," we see no error. Op. Br. at 32 (quoting RVI.1352–53). The Officers seem to argue the district court wrongly "determined . . . Plaintiffs survived summary judgment because Plaintiffs' evidence raised material issues that warrant resolution by a jury." Op. Br. at 27 (alterations omitted) (quoting *Cox*, 800 F.3d at 1243). In the Officers' view, the district court should have determined only "'whether Plaintiffs' factual allegations were sufficiently grounded in the record,' pursuant to the analytic framework intended for summary judgment motions predicated upon issues of qualified immunity[.]" Op. Br. at 26–27 (alterations omitted) (quoting *Cox*, 800 F.3d at 1243); *see also* Aplt. Supp. Br. at 6 (similar).

But the Officers misunderstand the applicable law. To overcome a qualified immunity defense at summary judgment, "a plaintiff must (1) raise *a genuine issue of material fact* that the defendant violated a federal constitutional or statutory right, and (2) show the right was clearly established at the time of the defendant's violative conduct." *Teetz ex rel. Lofton* v. *Stepien*, 142 F.4th 705, 722 (10th Cir. 2025) (emphasis added) (internal quotation marks omitted); *accord Prince* v. *Sheriff of Carter Cnty.*,

15

28 F.4th 1033, 1043 (10th Cir. 2022) ("In the first prong of qualified immunity, we ask whether [plaintiff] has raised a genuine dispute of material fact such that a reasonable jury could find a violation of [their] constitutional rights."); *Keith* v. *Koerner*, 843 F.3d 833, 849 (10th Cir. 2016) (concluding, under prong one of the qualified-immunity inquiry, plaintiff had "demonstrated a genuine issue of material fact about whether [defendant] acted with deliberate indifference to the risk of sexual misconduct by his employees"). That the district court relied on genuine disputes of material fact to justify the denial of summary judgment is not legal error.

*Finally*, to the extent the Officers claim the district court erred by failing to assess qualified immunity with "the *true* factual landscape" in mind, Op. Br. at 32 (quoting *Thomson* v. *Salt Lake County*, 584 F.3d 1304, 1326 (10th Cir. 2009) (Holmes, J., concurring)), we again see no error. When determining whether a plaintiff has satisfied her initial burden of establishing a constitutional violation that was clearly established, courts must "construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson*, 584 F.3d at 1312; *see Scott* v. *Harris*, 550 U.S. 372, 378 (2007) (instructing courts to "view the facts and draw reasonable inferences in the light most favorable to the party opposing" summary judgment, which in "qualified immunity cases . . . usually means

16

adopting . . . the plaintiff's version of the facts" (internal quotation marks omitted)); *Sanchez* v. *Guzman*, 105 F.4th 1285, 1289 (10th Cir. 2024) (explaining that, "in the qualified-immunity summary-judgment context," we construe "the facts in the plaintiff's favor," which "generally means adopting the plaintiff's version of the facts" (internal quotation marks omitted)). The district court followed these principles here.

We discern no error in the district court's application of the qualified-immunity inquiry at summary judgment.

## V

The Officers next argue the district court erroneously determined a reasonable jury could find they violated the clearly established Fourth Amendment rights of Mr. Ward and Ms. Ward Stamp. In the Officers' view, the district court erred on both prongs of the qualified-immunity analysis. With respect to Ms. Ward Stamp, the Officers argue she failed to establish the first prong (constitutional violation) because the Officers did not violate her Fourth Amendment right to be free from unlawful seizure. As for Mr. Ward's estate, the Officers maintain it failed to satisfy the second prong (clearly established law) because Mr. Ward's right under the Fourth Amendment to be free from excessive force in these circumstances was not clearly established.

A threshold issue here requires us to identify the facts from which our analysis should proceed. The Officers insist we may review the record *de novo* and adopt their version of the facts because the district court's version "is blatantly contradicted by the record." Aplt. Supp. Br. at 9. We disagree.

## A

The "blatant contradiction" exception applies when "the version of events the district court holds a reasonable jury could credit is blatantly contradicted by the record." *Teetz*, 142 F.4th at 719 (internal quotation marks omitted); *see Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). "This standard is a very difficult one to satisfy." *Vette*, 989 F.3d at 1162 (internal quotation marks omitted). We will depart from the facts found and inferences drawn by the district court only if those findings constitute "visible fiction." *Id.* at 1164 (quoting *Scott*, 550 U.S. at 381).

A party invoking the blatant-contradiction exception "cannot merely point to evidence that strongly supports [their] position, but must instead point to evidence that completely and indisputably contradicts the challenged factual finding." *Burke* v. *Pitts*, 157 F.4th 1326, 1333 (10th Cir. 2025) (alteration in original) (internal quotation marks omitted). A showing

of "visible fiction" generally requires "objective documentary evidence, such as video recordings or photographs." *Vette*, 989 F.3d at 1164; *accord Teetz*, 142 F.4th at 720. By contrast, testimonial evidence "simply do[es] not constitute the type of evidence that could satisfy the [blatant-contradiction] exception." *Id.* (first alteration in original) (quoting *Vette*, 989 F.3d at 1165 (collecting cases)). Because objective documentary evidence can "demonstratively depict the events as they occurred," such evidence is less "susceptible to being mistaken, falsified or incomplete." *McCowan* v. *Morales*, 945 F.3d 1276, 1281 n.3 (10th Cir. 2019) (holding a detention center intake form did not create a blatant contradiction).

The Officers take issue with several of the district court's conclusions about what a reasonable jury could find—that Mr. Ward did not reach for Deputy McWhorter's gun, Mr. Ward did not tackle Deputy McWhorter, Mr. Ward did not make hostile movements that rise to the level of resisting detention, and Mr. Ward did not manifest any intention to flee, justifying the use of force against him. *See* Op. Br. at 44–45 (quoting RVI.1347–48). The Officers contend the record renders these findings "visible fiction." Op. Br. at 43–44 (quoting *Vette*, 989 F.3d at 1164). For support, they cite many record sources, including body-camera footage of the shooting, their own testimony, medical records containing photographs of Deputy McWhorter's claimed injuries, and a police report about the shooting.

19

We see no blatant contradiction. For one thing, the Officers' mistakenly rely on non-documentary sources containing testimonial evidence from either the Officers themselves or third parties. For example, the Officers cite a Pueblo Police report and an interview with a bystander to support their claim that "[w]itnesses confirmed . . . Ward was resisting detention and fighting the deputies, that the struggle with Deputy McWhorter was violent, and that Ward was attempting to remove Deputy McWhorter's firearm from its holster." Op. Br. at 47 (first citing App.75; and then citing RV.1038). Whatever we might think of the veracity of these sources, they are not "the *kind of evidence*" that "even could" be capable of blatantly contradicting the district court's version of the facts. *Vette*, 989 F.3d at 1164–65 (internal quotation marks omitted); *see, e.g.*, *Harvest Grp., LLC* v. *Love's Travel Stops & Country Stores, Inc.*, 90 F.4th 1271, 1283 (10th Cir. 2024) (holding similar testimonial evidence was not the type of evidence that could satisfy the blatant-contradiction exception). The Officers offer no reason we should conclude otherwise.[6]

---

[6] To support their claim that Mr. Ward "headbutted Deputy McWhorter," the Officers cite photographs purporting to show Deputy McWhorter's injuries from the struggle. Op. Br. at 46 (citing RIV.953–61). Although photographs can satisfy the blatant-contradiction standard, *see Vette*, 989 F.3d at 1164, the photographs at issue were taken neither at the scene nor contemporaneously with the shooting. Instead, they were taken off-site later that day. These photographs therefore do "not demonstratively depict the events as they occurred" and are "more susceptible to being mistaken, falsified or incomplete."

The only sources that *are* the kind of evidence capable of satisfying the blatant-contradiction exception are the body-camera videos from the shooting. *See Vette*, 989 F.3d at 1164–65. The Officers contend these videos—and still images pulled from them—demonstrate Mr. Ward "tackled" and "headbutted" Deputy McWhorter and "grabbed onto Deputy McWhorter's duty belt, holster, and firearm" while the two struggled on the ground. Op. Br. at 45–46.

But the videos do not clearly depict any of the actions the Officers claim. *See Teetz*, 142 F.4th at 721 (considering video evidence to resolve a blatant-contradiction argument). The videos show a fast-breaking situation. Deputies McWhorter and Gonzales wrestle with Mr. Ward on the ground for about sixteen seconds before Deputy McWhorter, with his gun in hand, emerges on top of Mr. Ward and shoots him. Because the videos were filmed mere inches from the conduct at issue, it is unclear what exactly happened during the struggle between Mr. Ward and the deputies. That is

---

*McCowan*, 945 F.3d at 1281 n.3. But even if these photographs were capable of showing a blatant contradiction, we agree with Plaintiffs they have not "utterly discredited" Plaintiffs' version of events. *Scott*, 550 U.S. at 380. The Officers do not explain why they believe the photographs blatantly contradict the district court's finding that a reasonable jury could conclude Mr. Ward did not headbutt Deputy McWhorter. To the extent the photographs depict any injuries—which are hardly self-evident—they do not settle how those injuries arose, or even whether those injuries arose from the incident with Mr. Ward at all. We fail to discern any blatant contradiction.

ultimately for a jury to decide. At this stage, we have no trouble concluding a reasonable jury viewing the videos could find what the district court found: Mr. Ward neither tackled nor headbutted Deputy McWhorter nor grabbed his gun. *See* RVI.1347–48; *cf. Vette*, 989 F.3d at 1166 ("At least, a reasonable jury viewing the photographs could conclude as much."). To be sure, "the evidence could also be consistent with Defendants' version of events[.]" *Teetz*, 142 F.4th at 721. But the blatant-contradiction exception asks not whether the evidence is consistent with the defendant's version of events, but whether the evidence is *inconsistent* with the *plaintiff's* version of events. *See Scott*, 550 U.S. at 380. Where, as here, "two versions of events could be true, the district court correctly determined there is a material factual dispute; nothing in the record 'blatantly contradicts' that finding." *Teetz*, 142 F.4th at 721.

## B

Because the blatant-contradiction exception does not apply, we may not review the factual record *de novo*. Rather, in considering whether the district court erroneously determined a reasonable jury could find the Officers violated the clearly established Fourth Amendment rights of Mr. Ward and Ms. Ward Stamp, "we must accept any facts that the district court assumed in denying summary judgment." *Amundsen* v. *Jones*, 533 F.3d 1192, 1196 (10th Cir. 2008). The Officers insist they present "a purely legal

attack" on the district court's order. Aplt. Supp. Br. at 9. But the Officers' qualified-immunity arguments suffer from a fatal defect: Although the Officers *claim* to concede the district court's view of the facts, they fail actually to do so. An argument premised on facts the district court never found is not within the scope of our interlocutory jurisdiction.

**1**

We begin with the Officers' argument on the first prong of qualified immunity. Recall, the district court held a reasonable jury could find the Officers violated Ms. Ward Stamp's Fourth Amendment right to be free from unlawful seizure. The Officers challenge that conclusion, insisting their conduct did not violate Ms. Ward Stamp's constitutional rights. The Officers argue their efforts to detain Ms. Ward Stamp and her property after she witnessed the killing of her son were "reasonable" in light of "the specific circumstances of the case." Op. Br. at 43 (internal quotation marks omitted). According to the Officers, those "specific circumstances" included:

- "the presence of below freezing temperatures and snowfall," Op. Br. at 43; *see also* Op. Br. at 43 ("The crime scene, and inclement and dangerous weather, were not in Defendants' control."); Reply Br. at 19 (claiming "it was approximately 17° Fahrenheit and it was beginning to snow");

- that Ms. Ward Stamp was "locat[ed] inside of the crime scene," Op. Br. at 43 (emphasis omitted);

- that Ms. Ward Stamp was "allowed to remain in a PCSO vehicle," Op. Br. at 42; and

23

- that the Officers "communicated to [Ms. Ward Stamp] that she was *not* under arrest and it was not only difficult, but unsafe to question her at the scene," Reply Br. at 19.

Almost all the "facts" marshaled by the Officers were neither found nor assumed by the district court. Notably, the district court never made factual findings about snowfall, the outside temperature, the boundaries of the "crime scene," or Ms. Ward Stamp's location in relation to it. Nor did the district court find Ms. Ward Stamp was "allowed" to leave the PCSO vehicle where officers left her. To the contrary, the district court found a reasonable jury could find—and the Officers had not disputed—Ms. Ward Stamp was *not* free to leave the PCSO vehicle. The district court also never found the Officers told Ms. Ward Stamp she was not under arrest, or that questioning her at the scene would be dangerous. Instead, the district court made a contrary finding that Ms. Ward Stamp *was* under "arrest." RVI.1340. And although the Officers argue Ms. Ward Stamp's property was seized by members of the Pueblo Police Department, and not by PCSO personnel, *see* Op. Br. at 54, the district court found it "undisputed that Defendants [PCSO] seized Ms. Ward Stamp's cell phone and vehicle" and concluded a reasonable jury could determine "Defendants [PCSO] unlawfully seized Ms. Ward Stamp's property," RVI.1349–50.

The Officers' constitutional-violation argument improperly "deviates from the district court's findings of fact at summary judgment[,]" *Vogt* v.

24

*McIntosh Cnty., Okla., Bd. of Cnty. Comm'rs*, 98 F.4th 1013, 1016 n.3 (10th Cir. 2024), so it "is actually a challenge to the district court's conclusion Plaintiffs presented sufficient evidence to survive summary judgment[,]" *Castillo*, 790 F.3d at 1018; *see Ellis*, 147 F.4th at 1228 (finding no jurisdiction where appellants improperly "disregard[] many of the district court's facts and propos[e] their own re-weighing of the rest"). We cannot permit such a "back-door effort to use disputed facts." *Villalobos* v. *Picicco*, 168 F.4th 1057, 1062 (7th Cir. 2026) (internal quotation marks omitted). We lack jurisdiction to resolve an argument "that is nominally frame[d] as a legal issue but cannot reasonably be understood as anything other than an attack on the district court's determinations regarding the facts and inferences supported by the summary judgment record." *Coones*, 166 F.4th at 21 (alteration in original) (internal quotation marks omitted); *see Brown* v. *Dickey*, 117 F.4th 1, 6 (1st Cir. 2024) (finding no jurisdiction over an argument that "is premised on facts which the district court determined are in dispute").

To the extent the Officers argue there was no constitutional violation, we must dismiss the appeal for lack of jurisdiction.

**2**

We next turn to the Officers' argument on the second prong of qualified immunity. Contrary to the district court's conclusion, the Officers

25

insist "it was not clearly established that the Fourth Amendment prohibited Defendants' conduct in the situation they confronted[.]" Op. Br. at 35; *see* Op. Br. at 40 ("None of the cases cited by Plaintiffs . . . clearly establish that the Fourth Amendment prohibited Defendants' conduct in the situation they confronted[.]"). The Officers contend we have jurisdiction to review the state of the law in the specific context of "the situation they confronted[.]" Aplt. Supp. Br. at 8 (quoting Reply Br. at 14). We cannot agree.

At first blush, the Officers' argument seems like a straightforward candidate for our interlocutory jurisdiction. After all, our precedent has treated arguments about clearly established law as "a quintessential example of a purely legal determination fit for interlocutory review." *Fancher*, 723 F.3d at 1200 (internal quotation marks omitted); *see, e.g.*, *Tachias* v. *Sanders*, 130 F.4th 836, 842 (10th Cir. 2025) ("Abstract issues of law concern . . . whether th[e] law was clearly established at the time of the alleged violation." (internal quotation marks omitted)); *Roosevelt-Hennix* v. *Prickett*, 717 F.3d 751, 753 (10th Cir. 2013) ("To the extent an appeal turns on an abstract issue of law, we have jurisdiction to review a denial of qualified immunity. That is, this court has jurisdiction to review . . . whether that law was clearly established at the time of the alleged violation." (internal quotation marks and citation omitted)).

26

But on inspection, the Officers' clearly-established-law argument suffers from the same defect as their constitutional-violation argument: The argument attempts to "hide a factual dispute behind a legal façade[.]" *Coones*, 166 F.4th at 21. The Officers frame their clearly-established-law argument in terms of their "conduct *in the situation they confronted*[.]" Op. Br. at 35 (emphasis added); *see also* Op. Br. at 40; Aplt. Supp. Br. at 8. The Officers then claim—without any citations—that "the situation they confronted" involved the following circumstances: "a suspect under the influence of drugs and/or alcohol," who "told officers he might have a knife," "concealed his actions to destroy evidence," "resisted his detention," "tackled . . . a deputy," "headbutted the deputy," "failed to respond to verbal commands or submit to pain compliance techniques," and who the deputy "believed . . . was attempting to disarm him in a middle school parking lot as children were, imminently, to be released from school." Op. Br. at 35–36, 40–41; Reply Br. at 14.

Yet each of these purported "facts" either deviates from the district court's factfinding, *Vogt*, 98 F.4th at 1016 n.3, or else directly "contradict[s] the district court's universe of facts[,]" *Love* v. *Grashorn*, 134 F.4th 1109, 1114 (10th Cir. 2025). "[I]f a district court concludes a reasonable jury could find certain specified facts in favor of the plaintiff . . . we usually must take them as true—and do so even if our own *de novo* review of the record might

27

suggest otherwise as a matter of law." *Lynch* v. *Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) (internal quotation marks omitted). Recall, the district court ruled a reasonable jury could find Mr. Ward neither resisted Deputy McWhorter, nor indicated any intention to flee, nor reached for the deputy's gun, nor tackled the deputy. The district court also found a reasonable jury could find Mr. Ward posed no "immediate, and credible, risk to the deputies at the moment force was used." RVI.1347 (internal quotation marks omitted). And, notably, the district court made no findings about whether Mr. Ward was under the influence, whether he attempted to destroy evidence, or whether children were nearby.

We lack jurisdiction to resolve an argument that tries to smuggle in factual disputes under the guise of an abstract legal issue. *See Duda* v. *Elder*, 7 F.4th 899, 917 (10th Cir. 2021) (finding no jurisdiction over what appellant styled as a clearly-established-law argument because that argument was "limited to a discussion of [defendant's] version of the facts and the inferences that can be drawn therefrom" (quoting *Castillo*, 790 F.3d

at 1018)).[7] Accordingly, we must dismiss the appeal to the extent the Officers argue the law was not clearly established.[8]

\* \* \*

The Officers fail to present any alternative qualified-immunity arguments that accept the district court's facts and permit our interlocutory jurisdiction. *See Packard*, 86 F.4th at 863–64 (explaining appellants bear the burden of establishing our interlocutory jurisdiction). "[W]e will not make such an argument for them." *State Ins. Fund* v. *Ace Transp. Inc.*, 195 F.3d 561, 566 (10th Cir. 1999). Because we lack jurisdiction to review the qualified-immunity arguments presented by the Officers, we have no choice but to dismiss this appeal.

---

[7] In their reply brief, the Officers argue for the first time on appeal that "Plaintiffs and the District Court have defined clearly established law at too high a level of generality[.]" Reply Br. at 14. We do not address this argument, since the Officers raised it for the first time in reply. *See Alex W.* v. *Poudre Sch. Dist. R-1*, 94 F.4th 1176, 1186 (10th Cir. 2024) ("We do not consider late-blooming arguments raised for the first time in a reply brief." (internal quotation marks omitted)).

[8] Plaintiffs say the Officers' clearly-established-law argument "*is* properly the subject of an interlocutory appeal[.]" Resp. Br. at 2 (emphasis added). But this apparent concession does not change our conclusion. We have "an independent duty to inquire into [our] jurisdiction over a dispute, *even where neither party contests it and the parties are prepared to concede it.*" *Palma-Salazar* v. *Davis*, 677 F.3d 1031, 1038 n.3 (10th Cir. 2012) (emphasis added) (quoting *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1499 (10th Cir. 1994)).

## VI

To the extent the Officers' appeal raises an abstract legal question, we **AFFIRM** the denial of qualified immunity by the district court. We **DISMISS** this appeal for lack of appellate jurisdiction in all other respects.